**Affirmed and Majority and Dissenting Opinions filed June 12, 2014.**



In The

# Fourteenth Court of Appeals

NO. 14-12-01097-CR
NO. 14-12-01098-CR

**ADEDJI ALALINCOLN ADEKEYE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 337th District Court**
**Harris County, Texas**
**Trial Court Cause Nos. 1349025 & 1349026**

## MAJORITY OPINION

Appellant was convicted of attempted aggravated robbery and unlawful possession of a weapon. Punishment was assessed at thirty-five years' imprisonment on the first count, and ten years' imprisonment on the second. In multiple issues, we are asked to consider whether the evidence is sufficient to support the conviction for attempted aggravated robbery, and whether appellant was denied the effective assistance of trial counsel. We affirm.

# BACKGROUND

This case is about a thwarted robbery attempt. The crime occurred near a hair salon in a mostly vacant shopping center. The owner of the salon was sitting near the storefront, waiting for customers to arrive, when she noticed a suspicious woman walking by. The woman was wearing an unkempt wig and ripped jeans, and her movements were very slow. The woman passed by the salon twice in one minute. Within another two or three minutes, a white, older-model SUV parked in front of the salon. The salon owner grew concerned because the vehicle had no license plates and it was parked in reverse, as if to make a quick getaway.

The salon owner could see that the driver of the SUV was the same woman with the wig who had just walked by her store. Two male occupants were also inside the vehicle. One was bald and heavyset, and the other was slender. The slender man was turning his head from side to side, scoping out the area. The salon owner observed the heavyset male putting something on top of his head, but it was not fitting. The owner then saw the same man donning a pair of gloves and raising a handgun, as if to load to it with a magazine. The owner panicked and directed a coworker to call the police, believing that she was about to be robbed.

The owner watched as the heavyset male opened a passenger door with a bag in his hand. Before the man could fully touch the pavement, a shopper with a baby stroller walked in front of the salon, prompting the man to return to the vehicle. The man waited a few moments to try again. Just as he prepared to exit the vehicle a second time, a car drove by and parked two spaces away. The woman in the white SUV decided to move the vehicle to another spot. By the time she had parked, more cars had arrived at the shopping center and sirens could be heard in the distance. The SUV promptly drove away.

A police officer encountered the SUV not far from the shopping center. With lights and sirens engaged, a short chase ensued. At one point the SUV slowed down to a rolling stop, and the two male passengers jumped from the vehicle and ran off on foot. They discarded a black bag, a mask, gloves, and a handgun, which were all later recovered.

The police officer stayed with the SUV as it sped away, but he called for backup and gave descriptions of the two male passengers. A perimeter was established and a search team was called in, including dogs and a helicopter. Police were eventually led to a dump truck, where they found the bald, heavyset male hiding inside. He was sweaty and claimed to have been sleeping. Police apprehended the man and took him to the hair salon, where the salon owner identified him as the male passenger who had exhibited the gun. During trial, the owner made an in-court identification of appellant as the same bald, heavyset male.

Police detained the driver of the SUV after another short chase. She was also taken to the salon owner, who positively identified her as the woman with the unkempt wig and ripped jeans. Appellant's only defense witness, his mother, established that the female driver was also appellant's pregnant girlfriend. The slender male passenger was never caught.

**SUFFICIENCY OF THE EVIDENCE**

In his first and third issues, appellant challenges whether the evidence is sufficient to support his conviction for attempted aggravated robbery. Appellant asserts that there is no evidence that he had the specific intent to target the hair salon in a robbery or other criminal act. He also contends that, if he were involved in the act described, his actions only rose to the level of preparation, rather than criminal attempt.

3

When reviewing the legal sufficiency of the evidence, we examine all of the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). Although we consider everything presented at trial, we do not reevaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Because the jury is the sole judge of the credibility of witnesses and of the weight given to their testimony, any conflicts or inconsistencies in the evidence are resolved in favor of the verdict. *See Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). Our review includes both properly and improperly admitted evidence. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We also consider both direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from the evidence. *Id.*

Under the law of criminal attempt, a person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended. *See* Tex. Penal Code § 15.01(a). A person commits an aggravated robbery if, while in the course of committing a theft, he uses or exhibits a deadly weapon and intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. *See id.* §§ 29.02(a)(2), 29.03(a)(2). "In the course of committing a theft" means conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft. *Id.* § 29.01(1).

Intent can be inferred by a person's conduct and surrounding circumstances. *See Laster v. State*, 275 S.W.3d 512, 524 (Tex. Crim. App. 2009). Based on the record as a whole, a rational jury could have determined that appellant had the

4

requisite intent to commit an aggravated robbery of the hair salon. The evidence showed that appellant was seated in a car that was parked in a reverse position directly in front of a hair salon. The placement of the car was indicative of a person wanting to make a quick escape after criminal misconduct.

The evidence also showed that appellant lingered inside the vehicle while another male passenger monitored the area. Appellant was observed putting something on top of his head, and the jury could have inferred that the object was the mask that was recovered by police. Appellant was also seen donning a pair of gloves and raising a handgun, as though he were loading it with a new magazine. Appellant twice attempted to exit the vehicle with a bag in hand. On both occasions, appellant's return to the vehicle coincided with the arrival of third-party shoppers. A jury could have inferred from this conduct that appellant was attempting to minimize the risks of detection before he finally effectuated a robbery.

Appellant contends that the evidence is insufficient because the testimony was not always consistent. The salon owner claimed that appellant was sitting in the front passenger seat of the SUV wearing a beige-colored shirt. By contrast, the responding officer testified that appellant was sitting in the rear passenger seat wearing a bright yellow shirt. Neither of these statements goes to an element of attempted aggravated robbery. The witnesses were in agreement that appellant was involved in the robbery attempt. His placement within the vehicle and the description of his clothing does not alter our determination that a jury could have found every essential element of the offense beyond a reasonable doubt.

Appellant also contends that his conduct may have had other explanations that fell outside the scope of the indictment. Appellant suggests that he "perhaps" intended to rob another business, instead of the hair salon. He also conjectures that

5

he might have intended to commit an "other type of crime," such as an assault on a customer in an adjoining business. Appellant seems to argue that the evidence is insufficient unless the State disproves other reasonable hypotheses for his behavior. But the State has no such burden. *See Geesa v. State*, 820 S.W.2d 154, 159 (Tex. Crim. App. 1991), *overruled on other grounds by Paulson v. State*, 28 S.W.3d 570 (Tex. Crim. App. 2000). The evidence was sufficient to convict appellant as charged because the salon owner testified to facts demonstrating an attempted aggravated robbery on her business. The conviction was further supported by testimony that appellant had fled from police, which is circumstantial evidence of guilt that a jury may consider. *See Bigby v. State*, 892 S.W.2d 864, 883 (Tex. Crim. App. 1994).

Appellant finally contends that there is no evidence showing that he committed an act amounting to more than mere preparation. Appellant asserts that he abandoned a plan to commit an aggravated robbery before it rose to the level of actual attempt. We disagree.

Section 15.01 of the Texas Penal Code, the statute establishing the offense of attempt, draws an "imaginary line" between mere preparatory conduct, which is usually non-criminal, from an act which tends to effect the commission of the offense, which is always criminal conduct. *See Flournoy v. State*, 668 S.W.2d 380, 383 (Tex. Crim. App. 1984). Where the imaginary line falls must be determined on a case-by-case basis. *See Gibbons v. State*, 634 S.W.2d 700, 707 (Tex. Crim. App. [Panel Op.] 1982); *Sorce v. State*, 736 S.W.2d 851, 857 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd). A person may commit an attempt even if he could have taken further actions without actually committing the intended offense. *See Hackbarth v. State*, 617 S.W.2d 944, 946 (Tex. Crim. App. [Panel Op.] 1981); *Sorce*, 736 S.W.2d at 857.

6

The evidence showed that overt acts were taken in furtherance of an aggravated robbery. Appellant's girlfriend surveyed the hair salon, the intended target. Minutes later, she backed a vehicle into a parking spot in a reverse position. The parking spot was situated directly in front of the hair salon. By parking the vehicle so close to the hair salon and in a direction that would aid in a getaway, appellant participated in an act that tended but failed to effect the commission of an aggravated robbery.

The evidence also showed that the salon owner witnessed appellant putting something on top of his head. Although she denied affirmatively stating that the object was a mask, the jury could have determined that the object was in fact the mask that was recovered by police. Furthermore, the salon owner saw appellant exhibiting a gun, followed closely by his attempted exit from the vehicle with a bag in hand. The exhibition of a weapon is an act that tends to effect the commission of an aggravated robbery. Indeed, it is undisputed that appellant's actions placed the salon owner in fear of imminent bodily injury or death. Viewed in the light most favorable to the verdict, the evidence supports a finding that appellant took actions beyond mere preparation in furtherance of an aggravated robbery.

Our dissenting colleague asserts that evidence of flight may not be considered in reviewing appellant's attempt conviction. Although flight may not constitute an act that tends to effect an intended offense, it is still circumstantial evidence of guilt that bears on the defendant's intent as he was performing other actions. *Compare Hines v. State*, 458 S.W.2d 666, 668 (Tex. Crim. App. 1970) (op. on reh'g) (conviction for attempted burglary supported by evidence that defendant entered a backyard at night, placed his hand on a door, then fled after being detected) *with Bledsoe v. State*, 578 S.W.2d 123, 125–26 (Tex. Crim. App. [Panel

7

Op.] 1979) (conviction for attempted burglary of a vehicle reversed where the defendant was only seen near the vehicle and there was no evidence of flight after being confronted). Here, appellant performed specific acts that resulted in his detection and the calling of police—namely, he exhibited a weapon and attempted to exit a vehicle under circumstances indicative of an attempted aggravated robbery. Evidence of flight supports a finding that these acts tended but failed to achieve that robbery.

Our dissenting colleague also asserts that appellant never "attempted to enter a business," as alleged in the indictment. But an attempt conviction can still be supported by legally sufficient evidence even if other actions could have been taken to accomplish the intended offense. *See Slomba v. State*, 997 S.W.2d 781, 782–83 (Tex. App.—Texarkana 1999, pet. ref'd) (conviction for attempted aggravated robbery supported where defendant rushed at a bank employee as she was entering the building, but failed to intercept). All that remained in this case was for appellant to fully exit the SUV, walk the short distance to the hair salon, and complete the theft of property. We conclude that a rational jury could have determined that appellant crossed the "imaginary line" and that his conduct amounted to more than mere preparation. *Cf. Godsey v. State*, 719 S.W.2d 578, 583 (Tex. Crim. App. 1986) (attempted murder conviction supported where there was only one "last proximate act," the pulling of the trigger); *accord New v. State*, 606 S.E.2d 865, 866–87 (Ga. Ct. App. 2004) (attempted aggravated robbery conviction supported where defendant was observed moving his vehicle to different spots around a restaurant while wearing a mask and surreptitiously watching a group of people).

Appellant suggests that he abandoned the attempt because he twice returned to the vehicle after trying to exit it. Abandonment, or renunciation, is an

affirmative defense, but appellant never submitted it as a theory in the jury charge. *See* Tex. Penal Code § 15.04(a). Furthermore, abandonment must be voluntary, and the defense is not available if the abandonment is motivated in whole or in part "by circumstances not present or apparent at the inception of the actor's course of conduct that increase the probability of detection or apprehension or that make more difficult the accomplishment of the objective." *Id.* § 15.04(c)(1). Even if the defense had been charged, a rational jury could have determined that appellant did not voluntarily abandon the offense because his return to the vehicle was actually motivated by the arrival of other shoppers, who increased the probability of detection or apprehension.

Appellant's first and third issues are overruled.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his second and fourth issues, appellant asserts that he is entitled to a new trial because his defense attorney's performance was constitutionally defective. Appellant complains of more than a dozen acts and omissions from his trial counsel. We review these claims under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

Under *Strickland*, appellant must prove that his trial counsel's representation was deficient and that the deficient performance was so serious that it deprived him of a fair trial. *Id.* at 687. Counsel's representation is deficient if it falls below an objective standard of reasonableness. *Id.* at 688. This deficiency will deprive appellant of a fair trial only when counsel's performance prejudices appellant's defense. *Id.* at 691–92. To demonstrate prejudice, appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the claim of

9

ineffectiveness. *Id.* at 697. This test is applied to claims arising under both the United States and Texas Constitutions. *See Hernandez v. State*, 726 S.W.2d 53, 56–57 (Tex. Crim. App. 1986).

A sound trial strategy may be imperfectly executed, but the right to effective assistance of counsel does not entitle a defendant to errorless or perfect counsel. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). As a reviewing court, we look to the totality of the representation and to the circumstances of the case, not to isolated instances in the record reflecting errors of commission or omission. *Id.* Moreover, we consider the adequacy of assistance as viewed at the time of trial, rather than through hindsight. *Id.* at 482.

Our review of defense counsel's performance is highly deferential, beginning with the strong presumption that the attorney's actions were reasonably professional and motivated by sound trial strategy. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). Ordinarily, counsel must be accorded an opportunity to explain his actions before being condemned as unprofessional and incompetent. *See Bone v. State¸* 77 S.W.3d 828, 836 (Tex. Crim. App. 2002). Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). When the record is silent as to trial counsel's strategy, we will not conclude that appellant received ineffective assistance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

When a defendant moves for a new trial on a claim of ineffective assistance, as appellant has done in this case, we review the trial court's ruling for an abuse of discretion, reversing only if the ruling was clearly erroneous and arbitrary. *See*

*Okonkwo v. State*, 398 S.W.3d 689, 694 (Tex. Crim. App. 2013). A trial court abuses its discretion if no reasonable view of the record could support its ruling. *Id.* Under this standard, we view the evidence in the light most favorable to the trial court's ruling. *Id.* In the absence of express findings, we presume that the court made all necessary findings in favor of the prevailing party. *Id.*

**Failure to Investigate**

Appellant asserts that counsel failed to perform a laundry list of items, all in connection with his basic duty to investigate and prepare for trial. Specifically, appellant complains that counsel did not (1) obtain a full copy of the offense report, (2) view and photograph the salon and the SUV, (3) interview possible witnesses, (4) request the criminal histories of the State's witnesses, (5) review the State's subpoena list, and (6) request statements that were allegedly made by both appellant and his girlfriend after they had been taken into custody. In addition to these complaints, appellant also asserts that counsel failed to present the trial court with pretrial motions. Appellant does not specify the relief that should have been requested in these motions, but based on the context of the complaint, he seems to argue that counsel failed to move for discovery of such information that could have been found through reasonable investigation.

The record shows that counsel hired a private investigator, but as to these other matters of discovery, the record is silent regarding counsel's trial strategy. Assuming for the sake of argument that counsel failed to meet an objective standard of reasonableness, appellant has not shown that he suffered any prejudice. There is no evidence that information beneficial to appellant's defense would have been discovered but for counsel's unprofessional errors. Accordingly, these claims of ineffective assistance of counsel must fail as a matter of law. *See Stokes v. State*, 298 S.W.3d 428, 432 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd).

11

## Failure to Sever

In his next claim, appellant argues that counsel was ineffective because he failed to request a severance. Appellant cites to section 3.04 of the Texas Penal Code, which gives the defendant a right to have separate trials if he has been charged with more than one offense arising out of the same criminal episode. Because only one criminal episode was alleged in this case, counsel could have severed the attempted robbery charge from the unlawful possession charge and proceeded with two different trials and two different juries.

Appellant insists that a severance would have been preferable to the consolidated trial that he received. The reason, he argues, is that the proof admissible in the unlawful possession case would have been inadmissible in the case for attempted robbery. Appellant refers to the element in unlawful possession prosecutions that the defendant must have been convicted of a prior felony. *See* Tex. Penal Code § 46.04. Appellant stipulated that he was a felon in this case, but the stipulation specifically advised the jury that the conviction was for another aggravated robbery. Because the other pending charge in the consolidated trial was for a similar offense, this evidence had a tendency to be unfairly prejudicial. Appellant accordingly argues that counsel had no reason for failing to request a severance.

Counsel testified about his strategies in a hearing on a motion for new trial. He said that he tried the two charges together because he did not want the State to have "two shots of getting a guilty verdict." This strategy invoked legitimate concerns over the laws governing punishment. If a defendant is found guilty of more than one offense in a consolidated trial, then his sentences must run concurrently. *Id.* § 3.03(a). But if the offenses are severed, the trial court has the discretion to order the sentences to run either concurrently or consecutively. *Id.*

12

§ 3.04(b). Thus, appellant could have received stacked sentences if counsel had requested a severance. Here, the sentences could not be stacked because of the consolidated trial. Appellant has not rebutted the presumption that counsel's decision was motivated by sound trial strategy.

## The Prior Conviction

Continuing with a related claim, appellant argues that if it was reasonable to have a consolidated trial, then it was objectively unreasonable to advise the jury of his particular type of felony conviction. Appellant correctly observes that this level of proof is not required to prosecute a charge of unlawful possession. *See McIlroy v. State*, 188 S.W.3d 789, 793 (Tex. App.—Fort Worth 2006, no pet.). Counsel could have just stipulated that appellant was a convicted felon, without saying anything more. This tactic would have eliminated the "especially obvious" risk of unfair prejudice associated with mentioning a prior conviction that is similar to a pending charge. *See Old Chief v. United States*, 519 U.S. 172, 185 (1997) ("Where a prior conviction was for a gun crime or one similar to other charges in a pending case the risk of unfair prejudice would be especially obvious . . . ."). Appellant accordingly claims that counsel was ineffective because he advised the jury of the nature of his previous offense. Appellant similarly complains that counsel was ineffective because (1) he did not object during the arraignment when the prosecutor read an allegation that he had a prior conviction for aggravated robbery, (2) he did not request a limiting instruction on the use of the prior conviction, (3) he elicited witness testimony that emphasized the nature of the prior conviction, and (4) he referred to the prior conviction in his closing statement.

Much of counsel's testimony during the new trial hearing focused on his reasons for stipulating to the specific nature of appellant's prior offense. Counsel agreed that it was error to make that stipulation, but he tried to excuse his mistake

13

by claiming that he thought that the jury had already convicted appellant and that the trial had moved to punishment. The trial court expressly rejected this testimony as not credible. The court further found that counsel had a clear strategy to discuss the conviction during the guilt–innocence phase. That strategy was to advise the jury that the felony conviction had occurred when appellant was fifteen years old, that appellant had served his time, and that he was now gainfully employed and a better person overall.

The trial court did not make a separate finding that counsel's strategy was objectively reasonable, nor did it comment on the issue of prejudice. Even if we assumed that counsel's performance was objectively unreasonable, there is still no showing of prejudice under the second prong of *Strickland*.

Appellant only briefly addresses the issue of prejudice. In a single sentence, appellant makes a summary conclusion that his conviction should be reversed because counsel's error was serious and the evidence of guilt was not overwhelming. We disagree.

Based on our review of the record as a whole, the State presented a strong case of appellant's guilt. The eyewitness testimony of the salon owner placed appellant at the scene of the crime with a weapon in hand. A police officer further testified that appellant ran off on foot after being pursued in a vehicle. In the process, either appellant or his fellow passenger disposed of a bag, mask, gloves, and firearm, which fully corroborated the salon owner's testimony. Finally, appellant was found hiding at the base of a dump truck, sweaty and claiming to have been sleeping. This evidence of guilt is overwhelming. Appellant has not shown a reasonable probability that the outcome of trial would have been different but for counsel's unprofessional errors.

14

## Failure to Request an Instructed Verdict

Appellant argues next that counsel should have requested an instructed verdict because the evidence was insufficient to show that he intended to commit a robbery, as opposed to another crime. Appellant similarly argues that an instructed verdict was available because there was no evidence that the salon owner was the intended target of any criminal action.

Counsel did not testify about his reasons for not requesting an instructed verdict on these specific grounds. Furthermore, we have already concluded that the evidence was sufficient to support a conviction for the attempted aggravated robbery of the hair salon. Any request for an instructed verdict would have been futile. Therefore, appellant has not shown that counsel's performance was constitutionally deficient. *See Mooney v. State*, 817 S.W.2d 693, 698 (Tex. 1991) (ineffective assistance claim will not stand on allegation that counsel failed to engage in the filing of futile motions).

## The Plea Bargain

The next claim centers on counsel's improvident advice during the plea-bargaining process. Appellant was offered a plea bargain of ten years' imprisonment on both charged offenses, with the sentences to run concurrently. Counsel advised appellant that the State did not have a strong case and that he should proceed to trial. Counsel also told appellant that ten years was "about as worse as it can get" and that a harsher sentence would not be expected if appellant were ultimately convicted.

Ten years' imprisonment is the maximum term for a third degree felony, which is what appellant faced on the unlawful possession charge. *See* Tex. Penal Code §§ 12.34, 46.04(e). But the attempted aggravated robbery charge was a first

15

degree felony after the enhancement, and appellant faced a range of punishment between five and ninety-nine years' imprisonment or life. *Id.* §§ 12.32, 15.01(d), 29.03(b).

Appellant made a counteroffer of three years' imprisonment, but the prosecutor refused to consider it. Appellant then proceeded to trial, where he was fully admonished by the court that he would face the potential of more than ten years' imprisonment if convicted on the attempt charge. Now that he has been convicted and sentenced to more than three times the plea offer, appellant complains that counsel failed to give competent advice.

Appellant claims that counsel assured him that he would be found not guilty or receive no more than ten years in prison. The record is not so clear on this first point. Counsel advised appellant that he believed the State's case was "not strong enough to warrant a conviction." There was no testimony that counsel specifically promised a not guilty verdict. In fact, counsel expressly disavowed any notion of having guaranteed an acquittal. In the absence of findings on this issue, we must review the record in the light most favorable to the trial court's ruling. *See Okonkwo*, 398 S.W.3d at 694. Based on counsel's own testimony, the court could have determined that counsel did not make the promise that appellant has asserted, and that appellant's claim accordingly lacked merit.

Appellant also contends that counsel assured him that his maximum sentence was ten years' imprisonment, the same as the plea bargain. Again, the evidence is somewhat inconsistent. Counsel testified at one point that he advised appellant that ten years was "the worst" sentence he could receive. Later, counsel qualified this statement, asserting that he advised appellant that ten years was "about as worse as it can get." The qualification suggests that counsel knew that appellant faced more than just ten years' imprisonment. Based on this testimony,

the trial court could have found that counsel did not give mistaken advice, as appellant has asserted.

Even if appellant's advice had been wrong, appellant must still satisfy the second prong under *Strickland* that the advice resulted in prejudice. Where, as here, the bad advice arises in the plea-bargaining process, the defendant must show a reasonable probability that (1) he would have accepted the earlier offer if counsel had not given ineffective assistance, (2) the prosecution would not have withdrawn the offer, and (3) the trial court would not have refused to accept the plea bargain. *See Ex parte Argent*, 393 S.W.3d 781, 784 (Tex. Crim. App. 2013). Appellant does not address the prejudice prong at all in his brief. He makes no assertion that he would have accepted the plea bargain had counsel not given faulty advice. The trial court could have determined, based on the counteroffer, that appellant believed that any sentence longer than three years was unacceptable. Appellant has not established that he is entitled to relief on this claim.

### The Mask

Appellant also contends that counsel was ineffective because he failed to object to an abandonment, or alteration to the face of the indictment. In the attempt case, the indictment alleged that appellant "attempted to enter a business wearing a ski mask and gloves and carrying a handgun." The prosecutor moved to strike the word "ski" at the close of evidence because it was a variance from the proof, but not a fatal variance. Counsel stated on the record that he had no objection.

Appellant now complains that counsel was ineffective, but his brief contains just a short, four-sentence recitation of the facts. There is no citation to authority. Nor is there any legal analysis addressing counsel's allegedly deficient performance. We overrule this issue as inadequately briefed. *See* Tex. R. App. P. 38.1(i).

## Suggestive Identification

Appellant's next complaint focuses on the salon owner's out-of-court identification, which he contends was impermissibly suggestive. Appellant asserts that counsel should have moved to suppress the identification or otherwise requested a reliability instruction.

Counsel testified that his basic defensive strategy was to dispute appellant's identity, but the record is silent on his reasons for not moving to suppress the salon owner's identification or requesting a reliability instruction. Accordingly, appellant has failed to rebut the strong presumption that counsel's omissions were motivated by sound trial strategy. *See Greene v. State*, 124 S.W.3d 789, 791–92 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd).

## The Mother's Testimony

Appellant argues next that counsel was ineffective because he elicited damaging testimony from appellant's mother, the only defense witness. The mother testified that the female driver of the white SUV was appellant's pregnant girlfriend. She also testified that appellant was very close to a male friend who drove a white jeep, and there was some suggestion that this third party was the other male passenger who had fled from police.

Appellant argues that there was no reason for eliciting this testimony because it actually had the tendency to link appellant to the commission of an offense. Counsel testified that he called the mother "basically to talk about the car." At trial, the mother said that the white jeep belonging to the third party had tinted windows that could not roll down. The salon owner testified, by contrast, that the windows of the white SUV were partially rolled down. Counsel's apparent strategy was to cast doubt on the salon owner's testimony and suggest that the

18

vehicle and its occupants were not associated with appellant, but with some other person. This strategy may have been risky and imperfectly executed. However, it is not objectively unreasonable to undercut the prosecution's theory with evidence that the defendant may have been different from the description provided by the complaining witness.

Counsel did not specifically explain his reasons for questioning the mother about appellant's pregnant girlfriend. The State suggests that counsel's strategy may have been to gain sympathy with the jury. Assuming that counsel had no objectively reasonable strategy for eliciting this testimony, we cannot conclude that appellant was prejudiced. As we stated previously, the evidence of appellant's guilt was overwhelming, based solely on the testimony from the State's witnesses. We can perceive no reasonable probability that the outcome of the trial would have been different had appellant's mother not testified at all.

## Voir Dire

Appellant also claims that counsel was ineffective because he struck two venirepersons for cause. The venirepersons stated that they had friends and relatives who had had unfavorable interactions with law enforcement. There were some indications that these venirepersons might harbor some animosity towards the State. Counsel moved to strike them for cause, even though he commented that the venirepersons might actually be sympathetic to the defense: "It may be to my advantage, but I just want to be fair with the process."

Appellant argues that there was no reasonable strategy for striking the two venirepersons. However, both venirepersons stated that they had scheduling conflicts that prevented them from serving on the jury. Counsel's strategy was not addressed in the hearing on the motion for new trial. It is plausible that counsel struck the venirepersons for cause, having foreseen that they could not be seated

19

anyways, in an effort to gain respect from the trial judge. Appellant has not rebutted the presumption that counsel's actions were motivated by sound trial strategy. Similarly, because the venirepersons could not have been seated, there is no showing of prejudice.

## Closing Argument

Appellant's next complaint focuses on a statement made during closing argument. Counsel summarized the evidence and then stated, "We will never get to know how this one [appellant] gets to be in the car."

Appellant has made no attempt to show that counsel's performance fell below an objective standard of reasonableness. Appellant's brief merely recites the facts of the closing argument. There is absolutely no legal analysis. It is not the role of this court to supply legal arguments on behalf of the parties. We overrule this issue as inadequately briefed. *See* Tex. R. App. P. 38.1(i).

## Jury Question

Appellant's final complaint concerns a question submitted by the jury during its deliberations. The jury sent a note requesting the court to recite portions of the testimony from the salon owner and the responding police officer. The jury indicated that it was confused by these witnesses' conflicting statements regarding appellant's position in the vehicle. The trial court responded with an instruction that "a request to have the court reporter's notes read cannot be complied with unless the jury disagrees as to the statement of a witness." The jury replied with another note certifying that there was a disagreement over the officer's testimony. The jury indicated that the statement in dispute was the location of the two male suspects in the vehicle at the time of the rolling stop. The court allowed this portion of the testimony to be recited, but nothing else.

20

Appellant asserts that counsel was ineffective because he did not object to the court's failure to provide the salon owner's testimony as well. However, the jury never certified that there was a disagreement over her testimony. Thus, any objection would have been futile. Appellant has not shown that counsel's omission amounted to a constitutionally deficient performance.

## CONCLUSION

We conclude that the evidence is sufficient to support appellant's conviction for attempted aggravated robbery. We further conclude that appellant has not established any claim to ineffective assistance of counsel. We overrule all four issues and affirm the judgment of the trial court.


/s/    Tracy Christopher
         Justice


Panel consists of Justices Boyce, Christopher, and Brown. (Brown, J., dissenting). Publish — Tex. R. App. P. 47.2(b).