

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-21-00126-CR

---

AARON CALEB SWENSON, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 20F0505-102

---

Before Morriss, C.J., Stevens and van Cleef, JJ.
Opinion by Chief Justice Morriss

# OPINION

Fortunately for all involved, on the Saturday evening in April 2020 when Aaron Caleb Swenson drove from his Hooks, Texas, residence to Texarkana, Texas, with multiple loaded weapons in his vehicle, to conduct a self-styled hunt for a police officer to kill, Swenson wholly failed even to hurt any officer or physically endanger one. In fact, without one or more subsequent acts not found in this record, Swenson committed no act that tended to cause any officer's death. Along the way, however, Swenson broadcast live on social media his hunt for law enforcement victims and made clear his threats and intention to kill. From that attention-grabbing event, Swenson was charged with and convicted of terroristic threats, evading arrest or detention with a motor vehicle, and attempted capital murder. In this case, we address Swenson's appeal of his conviction of attempted capital murder.[1]

Swenson argues that the State's evidence is insufficient to support his conviction for attempted capital murder because the acts shown by the State were acts of mere preparation that, under the law, did not tend to effect capital murder. We agree that the State failed to meet its burden of proof. Because no evidence shows any act of Swenson beyond preparation that tended, but failed, to effect the commission of capital murder, we reverse the conviction and render a judgment of acquittal.

---

[1]In our companion cause numbered 06-21-00125-CR, we address his appeal of the conviction for evading arrest or detention with a motor vehicle. Swenson pled guilty to the charge of terroristic threat, and the jury made an affirmative finding that that crime was committed because of his bias or prejudice against peace officers. *See* TEX. PENAL CODE ANN. §§ 12.47, 22.07. Because Swenson does not challenge his conviction or sentence (twenty years) for terroristic threat, they stand.

*(1)     The Evidence at Trial*

Evidence was presented of Facebook postings that Swenson had made in the weeks leading up to the evening of his live-streamed hunt for officers. Gregory Harry, an agent for the Department of Homeland Security,[2] testified that Swenson identified as a member of the "Boogaloo movement, kind of an anti-government militia movement" who "refer to Valhalla kind of affectionately as the place that they will go to when they die valiantly in battle."[3] Members identified themselves by wearing Hawaiian print shirts. In one of his Facebook posts, Swenson said he had "his shirt" and was "ready to lay waste to some tyrants. Say the word, Boogs, and I roll with y'all. Liberty or Valhalla."[4]

Swenson made his hatred of law enforcement and his intent to kill at least one of them amply clear. One post showed Swenson's comment that he would shoot "cops repeatedly until their bodies stopped jerking."[5] Another posting was a photograph of police officers bearing a flag-draped coffin, indicating an officer killed in the line of duty. Swenson had captioned the

---

[2]In April 2020, Harry was a Tyler police officer working with the Federal Bureau of Investigation on domestic terrorism cases. Harry was asked to investigate Swenson, who had come to the attention of the Montgomery County, Maryland, Police Department. That agency's officers had been fired on while executing a search warrant, and the shooter, Duncan Lemp, was killed. The agency then received a "high number" of responses to news of that incident, including "direct and indirect threats toward law enforcement as well as acts of domestic terrorism." In mid-March 2020, in a Facebook post, Swenson responded to a Montgomery County Police Department press release and implied a threat to use "hydrofluoric acid containers above entry points to injure law enforcement."

[3]Harry testified that Swenson's use of the phrase "for liberty or Valhalla" demonstrated Swenson's willingness to die to achieve the death of a police officer and thus achieve a kind of Boogaloo martyrdom.

[4]Swenson connected his post also to the shooting of Lemp in Maryland. Swenson and other members of the Boogaloo movement claimed Lemp was sleeping when he was shot and killed by law enforcement. Swenson and other Boogaloo members used the refrain "his name was Duncan" as a rallying cry. In some of his Facebook posts, Swenson said "his name was Duncan" would be the last thing officers would hear before they died at the hands of Swenson or other Boogaloo members.

[5]That statement was posted in February 2020, two months before Swenson's live-streamed hunt for officers.

photo "How police officers take out their trash."  In two other posts, Swenson "invited" law enforcement officers to pull him over if they did not wish to go home at the end of their shifts. Swenson's publicly available utterances left no doubt of his state of mind or his antipathy toward law enforcement personnel.

On the day of the incident, Swenson drove to and around Texarkana expressing his intent and plan to murder a police officer.  With his two hands, Swenson drove and sometimes also held his cell phone, directing it in various directions as he also acted as his own camera operator. As he drove around Texarkana, he looked for officers.  According to the testimony of one officer who based his testimony on the audio track of the video recording of Swenson's search,[6] on a single occasion during Swenson's search, he may have even taken a shotgun in hand and loaded it, but no evidence suggests that such possible event occurred anywhere near any officer or that such possible event included any direction of the weapon toward any intended victim.

Swenson eventually spotted one officer in a particular location, then turned around and returned to that location only to find that officer gone.  He discussed his weapons and asked his live-stream audience which firearm he should use.[7]  He located another officer and announced his intent to go after that officer.  But, almost immediately, he noticed that a number of officers were behind or around him.  When presented with several officers in vehicles at a local Sonic

_____

[6]We do not find any recording in this record on which we can hear any loading of a weapon.  But our failure to hear a gun being loaded does not conclusively disprove that officer's testimony about hearing a weapon being loaded. *See Castilla v. State*, 374 S.W.3d 537, 540 (Tex. App.—San Antonio 2012, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 907 (Tex. Crim. App. 2010) (plurality op.) (recorded evidence must conclusively disprove contrary testimony to render that testimony legally insufficient)).

[7]After announcing to his audience that he had spotted a police officer and intended to return to that location, he asked his audience if he should use his .9 mm pistol or shotgun.

4

drive-in, he drove away. And, when his vehicle finally came to a stop after officers pursued him, he stayed in his truck about twenty minutes without taking any provocative or violent action, despite his previous declarations. He surrendered without further incident.

*(2) Standard of Review*

In reviewing the legal sufficiency of the evidence, we consider all the evidence in the light most favorable to the verdict and determine whether any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt based on the evidence and reasonable inferences from that evidence. *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014); *Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.). The fact-finder is the exclusive judge of the facts, the credibility of witnesses, and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899. We resolve any evidentiary inconsistencies in favor of the judgment. *Id.*

We measure the legal sufficiency of the evidence in reference to the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal*, 286 S.W.3d at 327 (quoting *Malik*, 953 S.W.2d at 240). This standard "ensures that a judgment of acquittal is reserved for those situations in which there is an actual failure in the

State's proof of the crime rather than a mere error in the jury charge submitted." *Malik*, 953 S.W.2d at 240.

The State sought to establish that Swenson both had the specific intent to commit capital murder by killing a peace officer and committed an act beyond mere preparation that tended, but failed, to accomplish such a killing. A person commits capital murder of a peace officer if he intentionally or knowingly causes the death of a peace officer who is acting in the lawful discharge of an official duty and who the person knows is a peace officer. TEX. PENAL CODE ANN. § 19.02(b)(1), § 19.03(a)(1) (Supp.).[8] Under the Texas "attempt" statute, "[a] person commits an offense if, [1] with specific intent to commit an offense, [2] he *does an act* amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." TEX. PENAL CODE ANN. § 15.01(a) (emphasis added). Missing from both the indictment and the evidence, however, is anything about the second element of the Texas "attempt" statute.

Count I of the indictment charged that Swenson

> heretofore on or about April 11, 2020, did then and there, with the specific intent to commit the offense of Capital Murder, do an act, to-wit: *had an organized and pre meditated plan* to murder one or more police officers, *made threats* on a public social media that he planned to murder one or more police officers, *armed himself with multiple weapons* in order to carry out his plan to murder one or more police officers, *drove vehicle around Texarkana*, Texas and other areas of Bowie County, Texas *broadcasting direct threats to murder police officers* and *attempted to locate a police officer* so he could carry out his plan to murder one or more police officers, which amounted to more than mere preparation that tended but failed to effect the commission of the offense intended.

---

[8]A police officer is a peace officer. TEX. CODE CRIM. PROC. ANN. art. 2.12(3) (Supp.); TEX. PENAL CODE ANN. § 1.07(a)(36).

6

(Emphasis added). The italicized language shows all active steps of Swenson alleged by the State that, it claims, collectively constituted attempted capital murder. In our view, based on the Texas "attempt" statute and the caselaw interpreting that statute, the indictment describes only preparation or intent within the statute.[9] However, the intent factor is not in doubt.

The crux of this case is whether, within the meaning of Section 15.01(a) of the Texas Penal Code, any act of Swenson found in the evidence went beyond mere preparation and crossed over into an act constituting attempt. The element that is missing from this indictment and the evidence at trial is any instance of Swenson wielding, raising, pointing, or even grasping, any weapon, as well as his failure to, even arguably, be within striking distance of any intended victim while holding a weapon. Simply put, none of the italicized acts, individually or collectively, are capable of causing death. Nevertheless, the hypothetically correct jury charge for attempted capital murder would allege and seek a verdict that the accused had taken some action that was more than mere preparation that tended but failed to accomplish the murder of a police officer, and we measure the sufficiency of the evidence based on the elements of the hypothetically correct jury charge.

*(3)* *Relevant Caselaw*

Here, the question is, as was stated in *Flournoy v. State*, "whether appellant's conduct caused him to cross the 'imaginary line,' which separates 'mere preparatory conduct,' which is usually non-criminal, from 'an act which tends to effect the commission of the offense,' which is

---

[9]The indictment, as well as the jury charge copied from it, seeks to cobble together an act of "attempt" out of expressions of intent and publicly broadcast preparations.

7

always criminal conduct." *Flournoy v. State*, 668 S.W.2d 380, 383 (Tex. Crim. App. 1984). To constitute an attempt, an act can, but need not, be the "last proximate act" before the intended crime is effected. *McCravy v. State*, 642 S.W.2d 450, 460 (Tex. Crim. App. 1980); *Cody v. State*, 605 S.W.2d 271, 273 (Tex. Crim. App. 1980). Thus, the Texas Court of Criminal Appeals has made clear that the law of attempt does not require defendant to commit the "last proximate act" to commit the intended crime, that is, striking the match or pulling the trigger. *Id.* But just where is the line drawn?

> Where the imaginary line falls must be determined on a case-by-case basis. *See Gibbons v. State*, 634 S.W.2d 700, 707 (Tex. Crim. App. [Panel Op.] 1982); *Sorce v. State*, 736 S.W.2d 851, 857 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd). A person may commit an attempt even if he could have taken further actions without committing the intended offense. *See Hackbarth v. State*, 617 S.W.2d 944, 946 (Tex. Crim. App. [Panel Op.] 1981); *Sorce*, 736 S.W.2d at 857.

*Adekeye v. State*, 437 S.W.3d 62, 68–69 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). As a result, the law seeks to draw the line between preparation and attempt in a way that allows law enforcement "intervention before the defendant has come dangerously close to committing the intended crime." *Godsey v. State*, 719 S.W.2d 578, 583 (Tex. Crim. App. 1986).

In our research of the relevant caselaw on the issue of where the line is drawn, we discern a two-fold pattern, dependent on what the attempted crime primarily threatens. Attempts that primarily threaten property appear to require, beyond intent, (1) the defendant's location at, or close to, the premises of the intended crime and (2) defendant's possession of the needed resources to commit it, accompanied by (3) defendant's overt act moving him or her toward its commission. *See, e.g.*, *Flournoy*, 668 S.W.2d at 383; *Gibbons v. State*, 634 S.W.2d 700, 707 (Tex. Crim. App. 1982); *McCravy*, 642 S.W.2d at 460; *Cody*, 605 S.W.2d at 273; *Adekeye*, 437

8

S.W.3d at 68–69.  Attempts that primarily threaten people, on the other hand, appear to require, beyond intent, (1) defendant's striking-distance proximity to the intended victim and (2) his or her possession of needed resources to attack the intended victim, accompanied by (3) defendant's act of taking a weapon in hand and positioning or moving it in the direction of the intended victim.  *See, e.g.*, *Godsey*, 719 S.W.2d at 580–83; *Flanagan v. State*, 675 S.W.2d 734, 744–45 (Tex. Crim. App. 1982); *Morrison v. State*, 625 S.W.2d 729, 730 (Tex. Crim. App. 1981); *Neal v. State*, 534 S.W.2d 675 (Tex. Crim. App. 1975); *Amos v. State*, 955 S.W.2d 468, 470 (Tex. App.—Fort Worth 1997, no pet.); *Blevins v. State*, No. 02-09-00237-CR, 2010 WL 5395836, at *2–3 (Tex. App.—Fort Worth Dec. 30, 2010, pet. ref'd) (not designated for publication).[10]

For the threat-to-property category, *McCravy* is instructive.  In *McCravy*, the Texas Court of Criminal Appeals acknowledged that the issue before that court—whether turning off power to the targeted building and climbing to its roof, without actual intrusion into the building, were acts beyond preparation that tended to, but failed, to effect an intended burglary—was a "very close question," but the court ruled that those allegations were sufficient to allege attempted burglary.[11]  *McCravy*, 642 S.W.2d at 459–61.  *McCravy* discussed *Cody v. State*, 605 S.W.2d 271 (Tex. Crim. App. 1980), which held that pouring gasoline at the intended arson site but not striking a match was a sufficient act of attempt, beyond preparation.  *Id.* at 460.  Those two cases

---

[10]"Although unpublished opinions have no precedential value, we may take guidance from them 'as an aid in developing reasoning that may be employed.'"  *Rhymes v. State*, 536 S.W.3d 85, 99 n.9 (Tex. App.—Texarkana 2017, pet. ref'd) (quoting *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd)).

[11]The court found the indictment sufficient for purposes of notice to McCravy and to invoke the trial court's jurisdiction for the charge of attempted burglary.  *See McCravy*, 642 S.W.2d at 460.

involved attempts primarily threatening property, and in each case, the defendant was at the site of the intended crime.

While *McCravy* did not address the sufficiency of the evidence, the court used the same language and approach as when it did weigh evidentiary sufficiency in *Flournoy*, 668 S.W.2d 380. Using the analysis from *McCravy*, the *Flournoy* court found sufficient the evidence that the appellant attempted to burglarize a residence when he "reached his hand through a screen door that was attached to [the targeted] mobile home. This constituted an act amounting to more than mere preparation that tended but failed to effect the commission of the intended offense," burglary of a habitation. *Id.* at 382. Again, the defendant was at the location and made an overt act moving him toward its commission.

The requirements for the threat-to-property category are also apparent in *Adekeye*, which affirmed the defendant's conviction for attempted aggravated robbery. *See Adekeye*, 437 S.W.3d 62. The proprietor of a hair salon noticed a woman, later proved to be Adekeye's girlfriend, walk past the salon "twice in one minute." *Id.* at 66. The shop owner found the woman suspicious, in that she wore "an unkempt wig and ripped jeans, and her movements were very slow." *Id.* "Within another two or three minutes, a white, older model" sports utility vehicle (SUV), without license plates and driven by the same woman, backed into a parking spot directly in front of the salon. *Id.* The shop owner was "concerned" because the way she parked seemed designed "to make a quick getaway." *Id.* Of the two men in the SUV, one appeared to be "scoping out the area." *Id.* The other was "putting something on his head, but it was not fitting." *Id.* The shop owner then saw the second man "donning a pair of gloves and raising a handgun,

10

as if to load it with a magazine." *Id.* That man, later identified as Adekeye, "opened the passenger door with a bag in his hand"; but, before he stepped out of the truck, a shopper passed on the sidewalk, and Adekeye pulled back into the vehicle. *Id.* A few minutes later, he again started to exit the SUV but stopped when another car passed and parked two spaces away. *Id.* The girlfriend then drove the SUV away, and police—who had been called by the shop owner— pursued. The SUV slowed, and Adekeye and the other man leapt out and ran. Law enforcement recovered from the area "a black bag, a mask, gloves, and a handgun." *Id.* at 67.

Based on all this evidence, the Fourteenth Court of Appeals held that, after a number of preparatory acts completed just across the sidewalk from the front door of the hair salon that defendant intended to rob, defendant's act, after that preparation, of opening the door to the car and starting to emerge with tools for robbery arguably in hand was sufficient to constitute attempted aggravated robbery of the salon. *Id.* at 68. The court found that "a rational jury could have determined that [Adekeye] *had the requisite intent*" to rob the hair salon, but its reasoning did not stop there. *Id.* (emphasis added). Adekeye's conduct in putting on gloves, loading a pistol, and twice beginning to exit the vehicle with a bag only to abort and stay in the SUV when "third-party shoppers" arrived allowed the jury to infer that Adekeye was "attempting to minimize the risks of detection before he finally effectuated a robbery." *Id.* In *Adekeye*, the defendant was mere steps away from the threshold of the salon, apparently with all he needed to accomplish his intended crime.

For the threat-to-persons category, something more is required, given the nature of the offenses, because the attempted act must be one that "tends but fails to effect" the resulting

11

offense. TEX. PENAL CODE ANN. § 15.01(a). For example, in *Godsey*, 719 S.W.2d 578, the defendant, in a standoff with several police officers, had a pistol in his waistband. Then,

> with "a sort of half-smile on his face," he slowly and deliberately pulled the gun out of his waistband with his right hand. The police yelled at him to drop the gun. Appellant raised the gun up, moving it in an arc, and in the process of moving it pointed it first toward [one officer], and, continuing to move his arm, pointed it toward the officers on the ground level, and finally brought it up and pointed it at [two other officers], who were directly across from him. Appellant leveled the gun at [those two officers].

*Id.* at 580. Officers opened fire, ending Godsey's threat. Godsey was convicted of attempted capital murder. After noting that two officers "were twelve to fifteen feet directly across from" Godsey, the Texas Court of Criminal Appeals found the evidence sufficient to affirm Godsey's conviction.[12] *See id.* at 583. *Godsey* demonstrates the importance of (1) striking-distance proximity to the intended victim, (2) possession of needed resources to attack the intended victim, and (3) the act of taking a weapon in hand and positioning or moving it in the direction of the intended victim to sustain a conviction for an attempted crime against persons.

Other relevant and analogous caselaw is consistent with our conclusion about the requirements of an attempt threatening persons. *See Neal*, 534 S.W.2d 675 (evidence insufficient to show *necessary intent* for charge of assault with *intent to murder with malice* where defendant started to reach for his gun, but officer shot at him, missing, causing defendant to throw his gun to ground without drawing or pointing it); *Amos*, 955 S.W.2d at 470 (attempted murder alleged by shooting firearm at intended victim); *Blevins*, 2010 WL 5395836, at *2–3

---

[12]At issue, though, was whether Godsey had the specific intent to kill a police officer. Most of the cases addressing the sufficiency of evidence to prove an attempted crime turn on the accused's intent. *See Garcia v. State*, 541 S.W.2d 428 (Tex. Crim. App. 1976), *overruled on other grounds by Flanagan v. State*, 675 S.W.2d 734, 741–42 (Tex. Crim. App. [Panel op.] 1982). Here, Swenson's intent to kill is not in dispute.

(evidence of act of attempt was sufficient where record, though containing contrary testimony, contained testimony that defendant hung "a shotgun . . . out the driver's side window" and aimed and pointed it at his ex-wife as he drove by the intended victim standing outside her residence with law enforcement officer); *Flanagan*, 675 S.W.2d at 744–45 (*intent to kill* sufficiently supported in evidence where defendant hung outside a window of a vehicle in which he was riding and fired shotgun at intended victim who was driving fifty feet behind him, though arguably somewhat outside potentially lethal range); *see also Hart v. State*, 581 S.W.2d 675, 678 (Tex. Crim. App. 1979) ("While simple acquisition and possession of a weapon would, in most situations, be preparation, putting that weapon to use to inflict injuries clearly goes beyond preparation. By alleging that appellant attempted to cause death [b]y stabbing, the State has alleged an act beyond mere preparation which fell short of the intended offense of murder").

With these requirements for threats to persons in mind, we turn to the analysis of the evidence in this case.

*(4)     No Evidence Shows Any Act of Swenson Beyond Preparation that Tended to Cause Death*

Attempted offenses under Section 15.01 of the Texas Penal Code are to be considered on a case-by-case basis. *Gibbons*, 634 S.W.2d at 707 (acquittal where all acts of defendant were preparatory only).

First, for the purpose of this analysis, Swenson's threats do not constitute acts of attempted homicide.[13] In this case, those allegations go to Swenson's intent to kill. To the extent they might be considered acts related to this charge, they do not tend to effect homicide.

---

[13]Swenson's threats lie at the heart of his conviction, not before us, for terroristic threats.

Instead, they had the contrary effect; they alerted law enforcement officials to Swenson's plan and caused their mobilization that evening. By definition, planning is preparatory. Therefore, the allegation that Swenson had a plan cannot qualify as an act beyond mere preparation.

We are left with allegations that Swenson armed himself, drove around Texarkana, and attempted to locate a police officer. Those acts also are mere preparation within the meaning of Section 15.01(a) of the Texas Penal Code. We are not directed to, and have not found, any caselaw suggesting that any such acts amount to more than mere preparation for homicide. Mere possession of a weapon normally does not rise to an attempt at homicide. *See Hart*, 581 S.W.2d at 678 (stabbing officer with knife constituted attempted murder, whereas "simple acquisition and possession of a weapon would, in most situations, be preparation"). When the reported attempted murder cases involve a weapon, the line separating preparation from an act of attempt appears to be at least grasping a weapon and in some way directing the grasped weapon toward the intended victim. In our view, driving and trying to locate a victim are at least as preparatory as mere possession of a gun.

*Adekeye* is different from the case at bar. Adekeye primarily threatened property and was in the immediate vicinity of his intended target. There were also several preparatory steps on Adekeye's part, many of which occurred immediately adjacent to the intended crime scene, culminating in two physical movements toward an entrance into the premises, acts determined by that court to have tended, but to have failed, to commit the ultimate crime of aggravated robbery. In contrast, although Swenson clearly stated his intent to kill an officer and was certainly armed

14

to have accomplished that intent, nothing in Swenson's acts, when committed anywhere near any intended victim, tended but failed to cause the death of any intended victim.

Our conclusion is supported by *Blevins*, which is cited by both parties. *See Blevins*, 2010 WL 5395836. Blevins's conviction for attempted murder was affirmed where there was evidence that he drove by his ex-wife with a shotgun hanging outside his driver's side window, pointing it at her. *Id.* at *2. There, the appellate court held "that the evidence [wa]s sufficient to show that [Blevins] took a loaded shotgun to [his ex-wife's] house intending to kill her with it and that his act amounted to more than mere preparation that tended but failed to effect [his ex-wife's] murder." *Id.* at *3. According to some evidence in that case, Blevins pointed a loaded weapon at, or in the direction of, his intended victim.

Here, no allegation and no evidence places any weapon in the hand of Swenson, with or without the direction or movement of the weapon toward any intended victim, while Swenson was within striking distance or otherwise. At no time did he point a weapon at or move any weapon in the direction of any law enforcement officer. He never brandished, wielded, or displayed any of his firearms or his sword in the vicinity or direction of any police officers. Yet the State argues that, by driving to Texarkana, which had a larger number of police officers than his native Hooks, and then turning his vehicle around to return to a spot where he had just seen an officer, Swenson accomplished the act of attempt. We have found no Texas cases to support that argument. We cannot see how driving to an area—even turning around to seek an officer he had just spotted—can be said to have tended but failed to effect the murder of an officer within the meaning of Section 15.01(a) of the Texas Penal Code and the interpreting caselaw. As a

15

result, we conclude that no act constituting attempted capital murder is found in the evidence. Therefore, there was legally insufficient evidence of the required element of some act which tended, but failed, to effect the murder of a police officer.[14] For these reasons, we must reverse Swenson's conviction for attempted capital murder and render an acquittal on that charge alone.[15]

Clearly, the evidence showed Swenson's intent to kill a law enforcement officer. But even this mountain of intent evidence cannot, alone, supply the statutorily required act constituting attempt. The evidence also certainly showed several steps of preparation and planning to accomplish this intended result. That said, nothing in the State's evidence showed that Swenson committed any act which tended, but failed, to effect his stated intent to commit capital murder.

---

[14]Compare the indictment in *White v. State*, No. 05-19-00438-CR, 2020 WL 4745547, at *4 (Tex. App.—Dallas Aug. 17, 2020, pet. ref'd) (mem. op., not designated for publication), which alleged that White, with the requisite intent to commit capital murder, did commit an act—stabbing and cutting a police officer with a knife, and by choking and strangling the officer—an "act amounting to more than mere preparation that tended but failed to effect the commission of the offense intended."

[15]None of this is to say that actual harm to a police officer would be required to convict on attempted capital murder. As the Texas Court of Criminal Appeals has held, the "harm, or lack of it, to the victim is not an element of the offense of attempted murder and, therefore, need not be proven at trial." *Yalch v. State*, 743 S.W.2d 231, 233 (Tex. Crim. App. 1988).

16

We reverse the trial court's judgment and sentence and render a verdict of acquittal on this charge alone.[16]


                                        Josh R. Morriss, III
                                        Chief Justice

Date Submitted:      July 20, 2022
Date Decided:        October 7, 2022

Publish

---

[16]Because of our resolution, it is unnecessary for us to address Swenson's complaints about the State's closing argument.