**Affirmed and Opinion filed May 28, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-13-00170-CR

### CORNELIUS JACKSON, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the County Court at Law No 2
Fort Bend County, Texas
Trial Court Cause No. 12-CCR-163243**

## O P I N I O N

Appellant, Cornelius Jackson, appeals his conviction for driving while intoxicated ("DWI"). In three issues, he contends (1) the evidence is insufficient to support the conviction, (2) the trial court erred by denying appellant's motion to suppress, and (3) the trial court erred by refusing to submit a requested jury instruction. We affirm.

# I. BACKGROUND

The State presented one witness at trial—Trooper Devon Wiles with the Texas Department of Public Safety ("DPS")—and a video recording of his interaction with appellant. This evidence collectively showed the following:

At approximately 1:30 a.m. on July 29, 2012, Trooper Wiles was on patrol in Fort Bend County. He clocked a Suburban driven by the twenty-one-year-old appellant travelling eighty-three miles per hour on Highway 59 where the speed limit is sixty-five miles per hour. After Trooper Wiles signaled for appellant to stop, he pulled over on the right shoulder. When approaching appellant's window, the trooper detected a strong odor of alcohol. Appellant denied he had been drinking and stated he was on the way to pick up his mother from a scrapbooking party. Trooper Wiles asked appellant to step to the rear of the vehicle.

Appellant was "a little bit unsteady" while walking to the rear of the vehicle. His clothing was "disorderly" because he wore swim trucks that were pulled down somewhat and no shirt. At the back of the car, Trooper Wiles noticed a strong smell of alcohol on appellant's breath. Appellant was swaying, he leaned against a barrier for support, some of his speech was incoherent, and his eyes were red, glassy, and watery—all of which Trooper Wiles considered signs of intoxication. After appellant exited the vehicle, it continued to smell strongly of alcohol. Appellant claimed his uncle used the vehicle earlier and must have been drinking. While at the scene, appellant agreed to give a breath specimen via a portable instrument. At trial, Trooper Wiles was precluded from revealing the results of that test, but he testified the results caused him to continue his DWI investigation.

Trooper Wiles discovered there were outstanding warrants for appellant's arrest. Trooper Wiles arrested appellant for the outstanding warrants, handcuffed appellant, and placed him in the trooper's car. Appellant insisted he be allowed to

call his mother because she owned the vehicle. Trooper Wiles replied that he was not required to permit the call, but he did allow it. The mother asked if she could retrieve the vehicle. Trooper Wiles told her that she had fifteen minutes to retrieve the vehicle or it would be towed, which the trooper explained at trial was a courtesy he was not required to extend. The mother said she would be there.

During that time period, Trooper Wiles conducted a search of the vehicle, which he characterized as an inventory pursuant to DPS policy when a vehicle will be impounded—in case the mother did not appear. Trooper Wiles found a styrofoam cup containing ice and a beverage which smelled strongly of alcohol, "stuffed" under the back seat near the driver's side. Appellant's mother eventually arrived and retrieved the vehicle.

After appellant was placed in the trooper's car, his attitude became combative and sarcastic. He engaged in various rambling, verbal tirades against Trooper Wiles, including repeatedly stating, "You gonna beat my ass?" "you're not even human," and that "most cops" lie. This demeanor continued while he was being transported to the jail.

At the jail, Trooper Wiles requested that appellant perform field sobriety tests and provide a breath specimen via the Intoxilyzer 5000. Trooper Wiles read appellant statutory warnings relative to the request for a breath specimen. Appellant refused to submit to the field sobriety tests or provide a breath specimen, without an attorney being present, but, according to Trooper Wiles, there is no right to an attorney during those tests. Appellant was then arrested for DWI.

Trooper Wiles had performed at least thirty DWI investigations during the year before trial of the present case. In Trooper Wiles's opinion, appellant was intoxicated when his vehicle was stopped by Trooper Wiles.

Additionally, the State presented a completed DPS "Property Inventory" form, which included the following entry under the list of items found in the vehicle: "1 Open White Cup Alcoholic Bev."

Appellant filed a pre-trial motion to suppress evidence regarding the cup containing an alcoholic beverage found in the vehicle. During trial, but before the evidence was admitted, the court heard and denied the motion to suppress.

A jury found appellant guilty of DWI. The trial court assessed punishment at 180 days in jail, probated for eighteen months, and a fine.

## II. SUFFICIENCY OF THE EVIDENCE

In his first issue, appellant contends the evidence is insufficient to support his conviction. When reviewing the sufficiency of the evidence, we view all evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational fact finder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011). This standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* Circumstantial evidence is as probative as direct evidence in establishing guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Each fact need not point directly and independently to guilt, as long as the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Id.*

A person commits DWI if he "is intoxicated while operating a motor vehicle in a public place." Tex. Penal Code Ann. § 49.04(a) (West, Westlaw through 2013 3d C.S.). Relative to this case, "intoxicated" means "not having the normal use of

4

mental or physical faculties by reason of the introduction of alcohol . . . into the body." *See id.* § 49.01(2) (West, Westlaw through 2013 3d C.S.).

Based on the following, the jury could have found beyond a reasonable doubt that appellant was intoxicated when stopped by Trooper Wiles:

- Appellant's excessive speed, disorderly clothing, unsteady gait and stance, incoherent speech, red, glassy, and watery eyes, and combative behavior. *See Kirsch v. State,* 306 S.W.3d 738, 745 (Tex. Crim. App. 2010) (recognizing evidence raising inference of intoxication includes erratic driving, post-driving behavior such as stumbling, swaying, slurring or mumbling words, and bloodshot eyes); *Cotton v. State,* 686 S.W.2d 140, 142–43 & 142 n.3 (Tex. Crim. App. 1985) (identifying characteristics that may constitute evidence of intoxication to include slurred speech, bloodshot eyes, unsteady balance, and staggering gait);

- The fact that appellant's breath smelled strongly of alcohol, and a cup containing a fresh alcoholic beverage was found in his vehicle—together with a reasonable inference that appellant hid it under the back seat when he realized he was being stopped; *see Cotton*, 686 S.W.2d at 142 n.3 (including the odor of alcohol on the person or his breath as characteristic that may constitute evidence of intoxication);

- Trooper Wiles's opinion, based on the above-cited facts and his experience, that appellant was intoxicated and more specifically had lost "the normal use of his mental and/or physical faculties." *See Annis v. State,* 578 S.W.2d 406, 407 (Tex. Crim. App. 1979) (holding officer's opinion that defendant was intoxicated was legally sufficient to support DWI conviction when based on officer's experience and observed facts, including defendant swerved his car across lane-divider, he appeared disorderly, his speech was "mush-mouthed," his eyes were red, his breath smelled of alcohol, and he swayed when walking or standing); *Henderson v. State*, 29 S.W.3d 616, 622 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (stating testimony of a police officer that an individual is intoxicated is probative evidence of intoxication); and

- Appellant's refusal to submit to the Intoxilyzer 5000 breath test and field sobriety tests. *See Bartlett v. State*, 270 S.W.3d 147, 153 (Tex. Crim. App. 2008) (recognizing defendant's refusal to submit to breath test is relevant to show consciousness of guilt); *Barraza v. State,* 733 S.W.2d 379, 381 (Tex. App.—Corpus Christi 1987), *aff'd,* 790 S.W.2d 654 (Tex.

Crim. App. 1990) (holding there is no significant difference between refusal to take field-sobriety test and refusal to perform breath test for evidentiary purposes); *see also* Tex. Transp. Code Ann. § 724.061 (West, Westlaw through 2013 3d C.S.) ("A person's refusal of a request by an officer to submit to the taking of a specimen of breath or blood, whether the refusal was express or the result of an intentional failure to give the specimen, may be introduced into evidence at the person's trial.").

Appellant cites several factors as purportedly negating he was intoxicated: contrary to Trooper's Wiles testimony, the video shows appellant was not "slurring, swaying, or stumbling"; he did not weave or drive erratically; he signaled and safely pulled over when Trooper Wiles activated his lights; he had no difficulty locating his proof of insurance; he coherently provided his name and address; and Trooper Wiles did not perform any field sobriety tests at the scene.

The video does not contradict Trooper Wiles's testimony. Trooper Wiles never testified appellant was "stumbling" but that he was "a little bit unsteady"; the jury could perceive from the video that this description was accurate. The video is not entirely clear on whether appellant swayed; but it indicates appellant attempted to lean on a barrier, consistent with the trooper's description that such action was intended to keep from swaying. The jury was free to believe Trooper Wiles who was in a better position to observe appellant's stance. Additionally, Trooper Wiles did not testify that appellant slurred his speech but rather that he was incoherent because **some** of his speech was difficult to understand. The video confirms there were instances in which appellant rambled incoherently about various matters. Appellant cites no authority that the other factors he outlines are dispositive on whether he was intoxicated. We defer to the jury's role to weigh these factors against those cited above which support a finding that appellant was intoxicated. *See Gear*, 340 S.W.3d at 746.

6

In summary, the evidence is sufficient to support appellant's conviction for DWI. We overrule his first issue.

### III. MOTION TO SUPPRESS

In his second issue, appellant argues the trial court erred by denying appellant's motion to suppress the evidence that a cup containing an alcoholic beverage was found in his vehicle. Appellant contends the warrantless search of his vehicle violated the United States and Texas Constitutions and did not satisfy the exception for a lawful inventory search.

Before the State presented Trooper Wiles's testimony regarding the cup, the trial court held a hearing, outside the jury's presence, on the motion to suppress. After hearing evidence, the trial court denied the motion. Then, the information regarding the cup was admitted via three separate avenues: (1) Trooper Wiles's testimony; (2) the video;[1] and (3) the inventory sheet.

### A. Standard of Review and Applicable Law

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). We give almost total deference to the trial court's findings of historical fact that are supported by the record and its application of the law to facts if the resolution of those questions turns on an evaluation of credibility and demeanor. *Id.* We review *de novo* the trial court's application of the law to the facts when the issue does not turn on credibility and demeanor. *Id.* The trial court is the exclusive trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony at the suppression hearing. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). In reviewing a trial court's ruling on a motion to

---

[1] While conducting the inventory, Trooper Wiles announced on the recording that he found an open container with ice and a strong smell of alcohol.

suppress, we must view the evidence in the light most favorable to the ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. U.S. Const. amend. IV.[2] A warrantless search of property is presumptively unreasonable subject to a few specifically defined and well-established exceptions. *McGee v. State,* 105 S.W.3d 609, 615 (Tex. Crim. App. 2003). An inventory search of an automobile pursuant to a lawful impoundment is such an exception and does not implicate the policies underlying the warrant requirement. *See Colorado v. Bertine*, 479 U.S. 367, 371 (1987); *Moskey v. State*, 333 S.W.3d 696, 700 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (citing *South Dakota v. Opperman*, 428 U.S. 364, 375–76 (1976); *Benavides v. State,* 600 S.W.2d 809, 810 (Tex. Crim. App. 1980)). An inventory search protects (1) the owner's property while the vehicle is in police custody, (2) the police against claims or disputes over lost, stolen, or vandalized property, and (3) the police from possible danger. *Bertine*, 479 U.S. at 372. Issues of probable cause are irrelevant because an inventory is not conducted to investigate criminal activity but instead to fulfill the above listed purposes. *See id.* at 371–72.

Before an inventory search is lawful, there must be a lawful impoundment. *Benavides*, 600 S.W.2d at 810. Among other situations, an automobile may be impounded if the driver is removed from the automobile and placed under custodial arrest and no other alternatives are available to ensure the protection of the vehicle. *Id.* at 811; *Josey v. State*, 981 S.W.2d 831, 842 (Tex. App.—Houston

---

[2] Appellant also generally asserts the search violated the Texas Constitution, which likewise protects against unreasonable searches and seizures. *See* Tex. Const. art. I, § 9. Appellant does not argue his state claim separately from his federal claim or contend the state constitution affords greater protections than the federal constitution. Consequently, we will analyze the claim solely under Fourth Amendment law. *See Manns v. State*, 122 S.W.3d 171, 192 n.97 (Tex. Crim. App. 2003).

[14th Dist.] 1998, pet. ref'd). Our court has outlined some factors that may be considered to determine the reasonableness of impoundment: (1) whether someone was available at the scene of the arrest to whom the police could have given possession of the vehicle; (2) whether the vehicle was impeding the flow of traffic or was a danger to public safety; (3) whether the vehicle was locked; (4) whether the detention of the arrestee would likely be of such duration as to require police to take protective measures; (5) whether there was some reasonable connection between the arrest and the vehicle; and (6) whether the vehicle was used in the commission of another crime. *Josey*, 981 S.W.2d at 842.

To satisfy the exception, the inventory search must be conducted in good faith and pursuant to a reasonable standardized police procedure. *Moskey*, 333 S.W.3d at 700 (citing *Bertine*, 479 U.S. at 374). The search must be designed to produce an inventory of the vehicle's contents and may not be used as a "'ruse for a general rummaging in order to discover incriminating evidence.'" *Id.* (quoting *Florida v. Wells*, 495 U.S. 1, 4 (1990)). The State bears the burden to establish that the police conducted a lawful inventory search. *Id.* (citing *Gauldin v. State*, 683 S.W.2d 411, 415 (Tex. Crim. App. 1984), *overruled on other grounds by Heitman v. State*, 815 S.W.2d 681 (Tex. Crim. App. 1991); *Evers v. State*, 576 S.W.2d 46, 50 & n.5 (Tex. Crim. App. 1978)). The State meets its burden by demonstrating an inventory policy exists and the officers followed the policy. *Id.* (citing *Moberg v. State*, 810 S.W.2d 190, 195 (Tex. Crim. App. 1991)). Moreover, an inventory search is not rendered unlawful because it is conducted prior to actual impoundment. *See Daniels v. State*, 600 S.W.2d 813, 815 (Tex. Crim. App. 1980).

**B.      Analysis**

We conclude the State proved the inventory search in the present case was lawful.[3]   The trial court issued findings of fact and conclusions of law relative to denial of appellant's motion suppress.   The following findings are pertinent to the trial court's determination that the inventory was lawful:

15.      Trooper Wiles . . . arrested Defendant for outstanding warrants.

17.      At the Defendant's request, Trooper Wiles contacted the Defendant's mother, who was the owner of the vehicle Defendant was driving. Trooper Wiles had a conversation with the Defendant's mother and indicated to her that he would give her 15 minutes to arrive at the scene to pick up the vehicle, rather than having it towed.

18.      Soon after this conversation with the Defendant's mother, Trooper Wiles decided to inventory the car, just in case the Defendant's mother did not come.

19.      During the inventory search, Trooper Wiles discovered a cup on the floorboard of the back seat of the vehicle, behind the driver's seat, containing a liquid that was pink in color, with ice cubes still intact and had an odor of alcohol that the Trooper characterized as "strong."

---

[3] The State contends appellant failed to preserve his complaint because he stated "no objection" when the videotape and inventory form were offered.  The Texas Court of Criminal Appeals has held that, although a motion to suppress preserves error without the need to object when the challenged evidence is subsequently offered at trial, a defendant waives his complaint if he affirmatively states "no objection" when the evidence is offered. *See, e.g. Gearing v. State,* 685 S.W.2d 326, 329 (Tex. Crim. App. 1985), *overruled on other grounds by Woods v. State,* 956 S.W.2d 33 (Tex. Crim. App. 1997).   However, the court more recently clarified that this principle is "context-dependent": if the whole record plainly demonstrates the defendant did not intend, and the trial court did not construe, the "no objection" assertion to abandon the earlier preserved complaint, the complaint is not waived. *See Thomas v. State*, 408 S.W.3d 877, 885 (Tex. Crim. App. 2013).   Arguably, because appellant did not abandon his motion to suppress relative to Trooper Wiles's testimony, appellant did not intend to abandon the motion relative to the videotape and inventory form, which essentially mirrored the trooper's testimony regarding the cup. Regardless, we need not decide whether appellant preserved error because we conclude the trial court did not err by denying the motion to suppress.

30. Trooper Wiles[] testified that there were tow trucks near the site of the traffic stop, therefore it was unnecessary for him to make a call for a tow truck.

31. It was not reasonable to expect the Trooper to wait 15 minutes for the Defendant's mother to arrive, then take an additional 15-30 minutes to inventory the vehicle once he realized that she was not coming. The State asserted that while waiting for the Defendant's mother to come, Trooper Wiles did the inventory search. Trooper Wiles had every intent to impound the vehicle if Defendant's mother had not shown up.

32. When Defendant was arrested for the outstanding warrants, Trooper Wiles followed DPS policy. Trooper Wiles completed the standard inventory form and attached it to his offense report, which was then submitted to the District Attorney's office.

(internal record references omitted).

The following conclusions of law are pertinent to the trial court's determination that the inventory was lawful:

6. . . . The Defendant was arrested for outstanding warrants. At the time of his arrest, there were no alternatives other than impoundment present at the time Trooper Wiles conducted the inventory search. An inventory policy is currently in effect for the [DPS] and Trooper Wiles adhered to that policy, based on the completion of the HQ-109 Inventory sheet.

9. Defendant's arrest was lawful because the officer discovered the Defendant had outstanding Texas warrants for his arrest.

10. Impoundment of Defendant's vehicle was lawful, because there were no reasonable alternatives to impoundment. No one else was available at the scene **at the time of arrest** to take possession of the vehicle, and Trooper Wiles was reasonable in his belief that the person who claimed that she would show up to take possession of the vehicle may not arrive in a timely manner. At least one of the factors listed in *Josey* weigh in favor of a lawful impoundment. (emphasis in original)

11

11. The State established that DPS has a policy in place for inventory procedures and that Trooper Wiles followed that policy in his inventory search. The inventory search was not a "ruse for a general rummaging in order to discover incriminating evidence." Instead, the inventory search was conducted by Trooper Wiles in good faith that he was taking custody of the vehicle pursuant to DPS procedures. Trooper Wiles completed the HQ-109 inventory sheet in compliance with the DPS' inventory policy.

12. The State satisfied its burden to demonstrate that Trooper Wiles conducted a valid inventory search, conducted in accordance with his agency's policy on inventories. The driver was arrested for outstanding warrants. [The] State asserted that although there were available alternatives other than impounding the Defendant's vehicle, that alternative was not at the roadside at the time the trooper conducted his inventory. If the alternative did not show up within the time allotted by the trooper as a courtesy to the Defendant's mother, then the trooper was ready to continue the lawful traffic stop and arrest and have the car impounded.

(internal legal citations omitted).

Appellant proffers several reasons that the trial court erred by concluding the intended impoundment and inventory were valid.

Appellant apparently challenges the trial court's finding that Trooper Wiles intended to impound the vehicle. However, the finding is supported by the record. Trooper Wiles's testimony at the suppression hearing was essentially the same as his trial testimony, and relevant portions of the video were admitted. In summary, during their phone conversation, appellant's mother asked if she could retrieve the vehicle, Trooper Wiles replied that she had fifteen minutes or else it would be towed, and the mother said she would be there. Trooper Wiles testified he was not required to allow her to retrieve the vehicle and he started the inventory in case she did not arrive or took too long and he needed to impound it. His testimony made

12

clear his search was intended as an inventory pursuant to impoundment and he was not looking for "anything in particular." He can be heard on the videotape telling his dispatcher he intends to conduct the inventory in case the mother does not arrive.

Appellant presented no evidence disputing Trooper Wiles's testimony, which the trial court was free to believe. *See Ross*, 32 S.W.3d at 855. Appellant relies on the fact that Trooper Wiles had not called a tow truck as demonstrating the inventory was a "ruse" for searching for evidence. However, Trooper Wiles explained at the suppression hearing, as the trial court found, that he did not need to call a tow truck because some were already gathered at the scene and one would be available as soon as he summoned.

Appellant also contends there was a reasonable alternative to impoundment because Trooper Wiles gave appellant's mother fifteen minutes to arrive and retrieve the vehicle. It is undisputed Trooper Wiles had this conversation with the mother; thus, we review as a question of law the trial court's conclusion that there was no reasonable alternative to impoundment despite that conversation. We agree with the trial court's conclusion. As the trial court noted, the pertinent factor previously set forth by our court is whether there was an alternative to impoundment "at the scene." See *Josey*, 981 S.W.2d at 842. Undisputedly, appellant was alone at the scene, and there was no one else present to take possession of the vehicle immediately after his arrest.

Further, a sister court addressed a similar issue when upholding a conviction for possession of cocaine. In *Yaws v. State*, 38 S.W.3d 720, 722 (Tex. App.—Texarkana 2001, pet ref'd), officers arrested the defendant for an outstanding warrant. An officer found cocaine when, pursuant to department policy, he inventoried the defendant's truck in order to impound it. *Id.* The officers'

13

testimony demonstrated the search was intended as an inventory and not "investigatory" because they did not suspect the truck contained drugs. *See id.* at 722, 725. The defendant had asked a deputy to call the defendant's wife, stating she could arrive and retrieve the truck within fifteen minutes, but the officer refused. *Id.* The court of appeals held the impoundment was proper because there was no other person "on the scene" who could take possession of the truck. *Id.* at 724.

The defendant complained that the officers ignored the "reasonable alternative" of his wife retrieving the truck within fifteen minutes. *Id.* When rejecting this complaint, the court recognized that Texas courts (1) have generally found impoundment to be reasonable if a driver was alone when arrested or passengers could not show they were licensed drivers, and (2) have not required the police to contact a relative or friend of the defendant to come to the scene and take possession of the vehicle. *Id.* (citing *Stephen v. State*, 677 S.W.2d 42, 43–44 (Tex. Crim. App. 1984); *Backer v. State*, 656 S.W.2d 463, 464 (Tex. Crim. App. 1983); *Daniels*, 600 S.W.2d at 814–15)). The defendant emphasized the officers had actual knowledge the defendant's wife could arrive within fifteen minutes because he provided that information. *See id.* at 725. The court concluded the defendant's statement did not amount to actual knowledge on the officers' part. *Id.* Nonetheless, the court held that, even if the officers believed the wife was fifteen minutes away, the court declined to impose a requirement that they contact her "because it could result in the police remaining at the scene longer than reasonably necessary." *Id.*

Applying this principle to the present case, Trooper Wiles was not required to allow appellant to contact his mother to retrieve the vehicle, much less wait on her to do so, even after voluntarily extending that courtesy. The mother's stating

14

she would appear within fifteen minutes did not amount to actual knowledge on the part of Trooper Wiles that she would do so, particularly in the middle of the night. In fact, the mother did not arrive in fifteen minutes although she did eventually arrive. Requiring Trooper Wiles to wait to determine whether the mother would appear before beginning impoundment procedures would have resulted in the trooper remaining at the scene longer than reasonably necessary. *See id.*

Finally, appellant suggests that, contrary to the trial court's finding, Trooper Wiles failed to follow DPS guidelines. However, Trooper Wiles testified during trial that the DPS guidelines call for an inventory if a vehicle will be impounded and require the officer to complete an inventory sheet.[4] As discussed above, we conclude Trooper Wiles's decision to commence impoundment procedures was proper at the time he conducted the inventory although he did not ultimately impound it. Appellant suggests Trooper Wiles failed to complete a written inventory report. But, appellant ignores the trooper's testimony that he completed the DPS standard inventory sheet, consistent with his customary practice, and it was admitted at trial.

---

[4] During the suppression hearing, Trooper Wiles did not expressly state what the DPS "guidelines" are. Instead, he subsequently provided such testimony before the jury. As a general rule, if the trial court is never asked to exercise its discretionary authority to reopen the suppression hearing, appellate review of its ruling on a motion to suppress is limited to the evidence presented at the pretrial hearing—the evidence before the court at the time of its decision. *Black v. State,* 362 S.W.3d 626, 635 (Tex. Crim. App. 2012). As an exception, if the parties consensually broach the suppression issue again before the fact-finder at trial, the appellate court should also consider the evidence adduced before the fact-finder in reviewing the propriety of the ruling on the motion to suppress. *Id.* In this case, the parties consensually broached before the jury the issue regarding legality of the inventory search because it was appellant who elicited the testimony from Trooper Wiles regarding the guidelines. Accordingly, we consider that testimony in our review.

In summary, because the cup was found during a lawful inventory search, the trial court did not err by denying appellant's motion to suppress. We overrule his second issue.

## IV. REQUESTED JURY INSTRUCTION

In his third issue, appellant contends the trial court erred by refusing to submit a jury instruction pursuant to Texas Code of Criminal Procedure article 38.23.

## A. Applicable Law and Standard of Review

Article 38.23 provides in pertinent part:

(a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.
In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

Tex. Code Crim. Proc. Ann. art. 38.23 (a) (West, Westlaw through 2013 3d C.S.)

A defendant's right to submission of a jury instruction under article 38.23 is "limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible." *Madden v. State*, 242 S.W.3d 504, 509–10 (Tex. Crim. App. 2007). Before a defendant is entitled to such an instruction, (1) evidence heard by the jury must raise an issue of fact, (2) the evidence on that fact must be affirmatively contested, and (3) that contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence. *Id.* at 510. There must be a genuine dispute about a

material issue of fact before an article 38.23 instruction is warranted; if there is no disputed fact issue, the legality of the conduct is determined by the court alone, as a matter of law. *Id.* at 510. In order for there to be a conflict in the evidence that raises a disputed fact issue, there must be some affirmative evidence in the record that puts the existence of that fact in question. *Id.* at 513. We review a trial court's refusal to submit an instruction in the jury charge for abuse of discretion. *See Wesbrook v. State*, 29 S.W.3d 103, 122 (Tex. Crim. App. 2000).

Appellant generally asserts on appeal that he was entitled to a jury instruction regarding the legality of the inventory search. However, he fails to identify any contested question of fact on that issue. At trial, he seemed to request an article 38.23 instruction on whether there was an alternative to impoundment and whether Trooper Wiles followed DPS guidelines. Consequently, we construe his appellate complaint as challenging the trial court's denial of that request.

There was no contested question of fact on the issue of whether there was a reasonable alternative to impoundment. As mentioned above, the facts pertinent to that issue were undisputed—i.e., the contents of Trooper Wiles's telephone conversation with appellant's mother. The trial court was presented with a legal issue on whether there was no reasonable alternative to impoundment despite that conversation. Further, there was no affirmative evidence in the record controverting Trooper Wiles's testimony that he followed the DPS guidelines. Accordingly, we conclude the trial court did not err by denying appellant's request for an article 38.23 instruction. We overrule appellant's third issue.

We affirm the trial court's judgment.

/s/    John Donovan
Justice

Panel consists of Justices Christopher, Donovan, and Wise.
Publish — Tex. R. App. P. 47.2(b).