**Affirmed, Affirmed as Modified, Affirmed as Modified and Memorandum Opinion filed June 25, 2019.**



**In the**

# Fourteenth Court of Appeals

**NO. 14-18-00009-CR**
**NO. 14-18-00010-CR**
**NO. 14-18-00021-CR**

**STEVEN KURT BAUGHMAN, Appellant**

**v.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 174th District Court**
**Harris County, Texas**
**Trial Court Cause Nos. 1532840, 1423420 & 1423421**

## MEMORANDUM OPINION

Appellant Steven Kurt Baughman was convicted by a jury of three offenses: two aggravated assaults with a deadly weapon and one unlawful possession of a firearm ("felon in possession").[1]  In each of the three cases, appellant pleaded "true"

---

[1] The offenses are: (1) aggravated assault with a deadly weapon of complainant Machell Spear (Tex. Penal Code Ann. § 22.02(a)(2); second-degree felony) (trial court case number

to two enhancement paragraphs—a November 28, 1989 conviction for attempted capital murder and a March 29, 1985 conviction for possession of a controlled substance. The trial court assessed punishment at 30 years of confinement for each offense, to run concurrently. Baughman brings five issues on appeal: (1) whether the trial court erred by denying his motion to suppress; (2) whether the trial court erred by not including an article 38.23(a) instruction in the jury charge; whether trial counsel rendered ineffective assistance of counsel by failing to (3) present any mitigating evidence at the punishment phase and (4) properly preserve an objection to the reading of appellant's prior felony offense for attempted capital murder in his felon-in-possession indictment in front of the jury; and (5) whether the trial court erred in assessing certain duplicative court costs. We partially sustain appellant's fifth issue, affirm the judgment in trial court case number 1532840, and affirm as modified the judgments in trial court case numbers 1423420 and 1423421.

## I. BACKGROUND

On the morning of April 2, 2014, complainant Machell Spear was helping her son, complainant John Spear, move into a new house. As they drove up to Machell's house in their moving van, appellant, Machell's ex-boyfriend, was standing in the driveway. Appellant began yelling at Machell that he wanted his watch back. Appellant put a gun against Machell's face and told her he was going to kill her and would kill John, too, if he "got in the way." John told his mother to run and not look back. Appellant hit Machell on the back of her head with the gun. Machell suffered a bleeding cut and a knot on her head. Machell and John both ran away. A neighbor

1532840 and appellate case number 14-18-00009-CR); (2) aggravated assault with a deadly weapon of complainant John Spear (Tex. Penal Code Ann. § 22.02(a)(2); second-degree felony) (trial court case number 1423420 and appellate case number 14-18-00010-CR); and (3) unlawful possession of a firearm by a person convicted of a felony at any location other than the premises where he lives (Tex. Penal Code Ann. § 46.04(a)(2); third-degree felony) (trial court case number 1423421 and appellate case number 14-18-00021-CR).

called 9-1-1.

After police responded to the scene, appellant returned to Machell's house on his motorcycle. He admitted to police that "he had a gun, but it wasn't there" and said "he threw it off of the motorcycle into a ditch" nearby. Appellant went with police to the ditch, but no gun was located. Police returned with appellant to the house. After the district attorney's office accepted charges against appellant, police placed him under arrest. Police conducted an inventory search of appellant's motorcycle before it was towed.

In the motorcycle's unlocked saddlebags, police recovered two weapons: a "32-caliber semiautomatic pistol" and a "1911 semiautomatic handgun, with three clips, three magazines." Police photographed the firearms and ammunition, took them back to the police station, and then sent them to the Harris County Institute of Forensic Sciences. Police also ran a criminal history on appellant; he had a prior felony conviction for attempted capital murder of a police officer.

Appellant was indicted for aggravated assault with a deadly weapon as to both Machell and John, and for being a felon in possession of a firearm. Appellant's felon-in-possession indictment alleged that he had been convicted of the felony offense of attempted capital murder on November 28, 1989. Appellant filed a motion to suppress "all evidence resulting from the illegal detention and/or subsequent illegal arrest of" appellant. Appellant argued that the evidence seized was the result of a search of his person and his motorcycle "without a valid search warrant and without probable cause or reasonable suspicion of criminal activity in violation of [appellant]'s constitutional rights under the Fourth and Fourteenth Amendments to the *United States Constitution*, Art. 1, Section 9, of the *Texas Constitution*, and *Tex. Code Crim. Pro.* Art. 38.23." Appellant further argued that the "search was not the result of actual consent" and "the scope of said search exceeded that authorized by

3

law."

The trial court conducted a suppression hearing. Retired Deputy Maxwell and Deputy Benningfield with the Harris County Precinct 4 Constable's Office testified. The trial court denied appellant's motion.

The trial court approved appellant's stipulation of evidence that he was previously convicted of the felony of attempted capital murder of a police officer. The record reflects appellant and the State agreed "that the offense which [appellant] was convicted [sic] will not be mentioned during voir dire, but that the stipulation will be admitted into evidence once the trial starts."

At appellant's arraignment, which took place after the jury was sworn, the State initially omitted reading the portion of appellant's felon-in-possession indictment, which stated that his prior felony conviction was for attempted capital murder. After a bench conference, the trial court asked the State to "reread the indictment for the felon in possession of a firearm word for word as it's written, if you don't mind." Trial counsel then expressly stated: "Note our objection, your honor." The trial court replied: "It's noted." The State proceeded to reread the felon-in-possession indictment in its entirety. Appellant pleaded "not guilty" to all three offenses.

During trial, while Maxwell was testifying, the State offered redacted versions of (1) appellant's stipulation of evidence that he was previously convicted of the felony of attempted capital murder of a police officer and (2) the judgment for that offense.[2] Trial counsel stated that he had "no objection," and the documents were admitted and published to the jury.

The jury convicted appellant of all three offenses. Appellant's punishment

---

[2] These documents were redacted to remove appellant's sentence of 50 years.

4

phase proceeded before the trial court. In all three cases, appellant entered a plea of "true" to the enhancement paragraphs related to prior felony convictions for attempted capital murder and possession of a controlled substance. The State presented testimony from a former patrol officer with the University of Houston Downtown Police Department. He described how in February 1988, when police were attempting to arrest appellant on a felony warrant for retaliation, appellant gained control of the officer's weapon and shot him, along with another university officer and a custodian. Trial counsel presented no evidence. The State recommended a sentence of 50 years. Trial counsel requested the lower range of 25 to 30 years. The trial court assessed appellant's punishment at 30 years.

Appellant moved for a new trial, arguing ineffective assistance of counsel. After holding a hearing, the trial court denied the motion. Appellant timely appealed.

## II. ANALYSIS

### A. Motion to suppress

In appellant's first issue, he contends the trial court erred by denying his motion to suppress because the State failed to establish that the police conducted a lawful inventory search. According to appellant, the inventory search was unlawful because the officer who wrote down the items in the inventory list did not testify and the list did not itemize the weapons that officers testified were discovered in the saddlebags of appellant's motorcycle.

The State responds that appellant did not preserve this issue because appellant did not raise these "improper inventory" arguments in his motion or at the hearing. Instead, appellant primarily argued in his motion that evidence was illegally seized without a warrant and without probable cause or reasonable suspicion of criminal activity. At the suppression hearing, appellant focused his argument on the timing

5

of when he was placed under arrest. According to the State, because appellant's issue on appeal does not comport with his grounds for suppression in the trial court, the issue is waived. We agree with the State.

An inventory search is permissible if conducted pursuant to a lawful impoundment. *See South Dakota v. Opperman*, 428 U.S. 364, 375–76 (1976); *Delgado v. State*, 718 S.W.2d 718, 721 (Tex. Crim. App. 1986). An inventory search qualifies as an exception to the warrant requirement when the State demonstrates that an inventory policy exists and officers followed the policy. *Evers v. State*, 576 S.W.2d 46, 50 & n.5 (Tex. Crim. App. 1978); *Jackson v. State*, 468 S.W.3d 189, 195 (Tex. App.—Houston [14th Dist.] 2015, no pet.). A written inventory is not required for the State to satisfy its burden. *Stephen v. State*, 677 S.W.2d 42, 44 (Tex. Crim. App. 1984) (citing *Evers*, 576 S.W.2d at 49).

At the hearing, Maxwell and Benningfield provided testimony regarding the inventory search of the items located in appellant's motorcycle. Maxwell identified the Precinct 4 "tow slip"; he was included on the slip as the primary officer on the scene. Maxwell stated that Benningfield conducted the inventory. Following Precinct 4 "protocol," before conducting the inventory, Benningfield made sure that appellant's motorcycle was going to be towed and charges against him had been accepted. According to Benningfield, when doing an inventory, police write down "the type of vehicle, the VIN number [sic], license plates, anything that's inside the vehicle, whether it be phone, wallets, anything that's in it, we write it down." Benningfield explained that the policy of Precinct 4 is to keep most items, except certain personal items and firearms, which "are a different category" of item, with the vehicle. She further explained that Precinct 4 policy permits police to look inside unlocked compartments when doing an inventory. Benningfield personally removed all the items, including the firearms and ammunition, from appellant's motorcycle

6

and unlocked saddlebags.

Appellant's motion to suppress did not argue that the police inventory search was unlawful. In his reply, appellant argues that no "magic words" are required to preserve a complaint and that he "raised the legality of the inventory search" at the hearing.[3] He contends that his statement—"Okay. Then the inventory search."—alerted the trial court to a concern about the inventory search." But this statement is not specific enough to preserve appellant's arguments on appeal.

Appellant further contends that "the trial court appeared to be aware of his complaint when it made its ruling based on the testimony it heard." In making its ruling, the trial court stated that, at the point when appellant was under arrest, police "obviously had the right to inventory his vehicle and whatever belongings he had in the vehicle or on himself." This statement reflects the trial court concluded that the

---

[3] The following is the entirety of appellant's argument at the hearing:

> [TRIAL COUNSEL]: It's our position that [appellant] was actually under arrest, placed under arrest when he told the police that he threw the gun away.
>
> THE COURT: So just—
>
> [TRIAL COUNSEL]: Probable cause to arrest him at that time.
>
> THE COURT: Assuming with me for the sake of argument that I agree with you and said at the point that he said I threw the gun in a ditch, if he were under arrest at that point, the statement has already been made. So, what would there be to suppress from that point forward?
>
> [TRIAL COUNSEL]: Well, unless he was under arrest when he made the statement.
>
> THE COURT: Well, you just said he wasn't arrested until after he made the statement. He couldn't have been under arrest before he made the statement.
>
> [TRIAL COUNSEL]: Okay. Then the inventory search.
>
> THE COURT: At that point, he was under arrest. So, they obviously, under the law, had the right to inventory his vehicle and whatever belongings he had in the vehicle or on himself. So, the Motion to Suppress is denied.
>
> [TRIAL COUNSEL]: Thank you, your Honor.

inventory search sufficiently qualified as a warrant exception. However, it does not indicate the trial court was aware of, considered, and determined whether any now-argued "irregularities," *e.g.*, lack of testimony from the officer who filled in the inventory list[4] or that the inventory did not list the weapons, invalidated the inventory search. Nor did appellant at any time ask the trial court to reconsider its suppression ruling based on any inventory-list concerns.

We conclude that appellant's first issue is waived and therefore overrule it. *See* Tex. R. App. P. 33.1(a); *Douds v. State*, 472 S.W.3d 670, 674–77 (Tex. Crim. App. 2015); *Rothstein v. State*, 267 S.W.3d 366, 372–74 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd).

## B. Article 38.23(a) instruction

In his second issue, appellant contends there was conflicting testimony at trial from Maxwell and Benningfield regarding which of them or possibly a Precinct 4 trainee officer "actually filled out the itemized items on the inventory slip," and whether this factual dispute required the trial court to sua sponte include an article 38.23(a) instruction in the jury charge regarding evidence not to be used.[5] Appellant argues a juror could reasonably determine that because neither deputy listed the items recovered, the State failed to meet its burden in establishing that police followed department inventory-search policy. He further asserts that he suffered egregious harm from this error.[6]

---

[4] At the suppression hearing, Maxwell testified he did not fill out the tow slip. Benningfield testified that she filled out most of the tow slip, but not the "vehicle contents" section.

[5] Although appellant did not request such instruction, we consider article 38.23(a) jury-charge error, whether preserved or not. *See Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003).

[6] Because we conclude there was no error, we do not reach harm. *See* Tex. R. App. P. 47.1; *Middleton*, 125 S.W.3d at 453–54.

The State does not dispute that the record evidence is unclear as to precisely who filled out the "vehicle contents" portion of the tow slip. According to the State, however, "this evidence does not raise a factual dispute as to whether the firearms and ammunition were illegally obtained by virtue of police misconduct."

A trial judge has a sua sponte duty to prepare a jury charge that accurately sets out the law applicable to the specific offense charged. *Oursbourn v. State*, 259 S.W.3d 159, 179 (Tex. Crim. App. 2008); *see* Tex. Code Crim. Proc. Ann. art. 36.14. Article 38.23(a) requires a jury instruction only if there is a genuine dispute about a material fact that is essential to deciding the lawfulness of the challenged conduct in obtaining the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.23(a) ("No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case. In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained."); *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007). If other facts not in dispute are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not material to the ultimate admissibility of the evidence. *See Madden*, 242 S.W.3d at 510.

We conclude that a factual dispute over who filled in the "vehicle contents" portion of the tow slip is not essential to deciding the lawfulness of the challenged conduct in obtaining the firearms and ammunition here. There was no dispute that police removed the items pursuant to an inventory search. According to department policy, inventory searches are conducted after charges are accepted and when a

vehicle is going to be towed. Also, police are allowed to open containers in a vehicle during an inventory search. Police create an inventory list so that they will not face liability for the items turned over to the wrecker with the vehicle. There was no dispute that police conducted the inventory search of appellant's motorcycle according to these protocols. Even disputed evidence reveals that someone with Precinct 4 who was assisting at the scene—whether it was Maxwell as the "primary unit," Benningfield, or a trainee officer who "probably" "fill[ed] it out for the experience"—wrote down the items from appellant's motorcycle during the inventory search. Moreover, there was no affirmative evidence in the record regarding any policy requirement that (only) one person fill out the inventory list, much less that a deviation from such a policy would render the inventory search unlawful. *See Oursbourn*, 259 S.W.3d at 177; *Jackson*, 468 S.W.3d at 200.

Therefore, the trial court did not err in failing to sua sponte include an article 38.23(a) instruction in the charge. We overrule appellant's second issue.

## C. Appellant's ineffective-assistance-of-counsel claims

In appellant's third and fourth issues, he argues that his trial counsel rendered ineffective assistance of counsel by failing to present any mitigation evidence at the punishment phase and by failing to properly preserve an objection to the reading before the jury of appellant's prior felony conviction for attempted capital murder in his indictment for felon in possession.

### 1. Standard of review and applicable law

When, as here, an appellant asserts ineffective assistance of counsel in a motion for new trial, we review the trial court's denial of the motion for abuse of discretion. *Parker v. State*, 462 S.W.3d 559, 562 (Tex. App.—Houston [14th Dist.] 2015, no pet.). "We view the evidence in the light most favorable to the trial court's

10

ruling, and we reverse only if no reasonable view of the record would support the trial court's finding." *Id.* To prevail on a claim of ineffective assistance of counsel, appellant must show by a preponderance of the evidence that: (1) trial counsel's performance was so deficient that it "fell below an objective standard of reasonableness" and (2) counsel's deficient performance prejudiced appellant's defense. *Strickland v. Washington*, 466 U.S. 668, 687–88, 692 (1984); *Perez v. State*, 310 S.W.3d 890, 892–93 (Tex. Crim. App. 2010). An appellant's defense was prejudiced if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

"Because there are countless ways to render effective assistance, judicial scrutiny of trial counsel's conduct must be highly deferential." *Ex parte Rogers*, 369 S.W.3d 858, 862 (Tex. Crim. App. 2012) (internal quotation marks omitted). "Given the difficulty in evaluating trial counsel's performance, the defendant must overcome the presumption that the challenged action might be considered sound trial strategy." *Id.* We review de novo the trial court's ultimate decision on the prejudice prong of the *Strickland* test, while giving deference to the trial court's implied resolution of underlying factual determinations. *Johnson v. State*, 169 S.W.3d 223, 239 (Tex. Crim. App. 2005); *Parker*, 462 S.W.3d at 562.

## 2.  Trial counsel's failure to present mitigation evidence at punishment

Appellant first points to trial counsel's failure to present any evidence during the punishment phase. He argues that trial counsel's decision not to call available character witnesses was the result of inadequate investigation, not a strategic decision. With regard to prejudice, appellant acknowledges that 30 years is only five years more than the 25-year minimum and is 20 years below the 50 years the State

11

recommended. However, appellant contends that five fewer years would make a difference to someone in his position.

When one *Strickland* prong is dispositive, we need only address that prong on appeal. *Washington v. State*, 417 S.W.3d 713, 724 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). We conclude appellant has not shown that any deficient performance by his trial counsel prejudiced his punishment defense. To evaluate prejudice in the context of a failure to investigate or present mitigating evidence, we must reweigh the evidence in aggravation against the totality of available mitigating evidence. *Id.* at 728. Here, when the trial court instead of the jury assessed appellant's punishment, we compare the evidence presented by the State with the evidence the trial court did not hear due to counsel's failures. *See id.* at 725.

At the punishment phase, the State presented detailed evidence of appellant's prior attempted-capital-murder offense from one of the police officers whom appellant shot in 1988. In his new-trial motion, appellant put forth three affidavits: one from his mother, one from his uncle, and another from a pen-pal friend from prison. The State submitted an affidavit from trial counsel.

At the new-trial hearing, the trial court stated it did not believe that "some of this testimony" from appellant's character witnesses "would have changed that outcome." The trial court stated that it "certainly heard from the mother during the [guilt/innocence] trial," so it already "had the gist" of what she would have said at punishment, *i.e.*, regarding her positive relationship with her son and his generous nature. In his affidavit, trial counsel stated that, during the guilt/innocence phase, appellant's mother discussed appellant's "normal background" and another one of his friends, an Army veteran, testified that appellant "was generous and helped him." In addition, both the affidavits from appellant's uncle and his friend similarly concerned appellant's positive relationships and generous character.

12

The trial court concluded that trial counsel made a "brilliant tactical decision to go to the Court for punishment" because the jury "would have probably been inclined to give [appellant] much more based on what he did in the prior." According to the trial court, trial counsel "did an excellent job convincing me, based primarily on his closing argument, that [appellant] should be sentenced based on the facts that occurred during this trial and not the horrendous prior offense that he committed and the State put on evidence about" and "did an excellent job of convincing me to assess the punishment at 20 years below not only what the State was asking for during the punishment hearing but what they had offered him in exchange for a plea." Finally, we note that trial counsel expressly requested "the lower range of punishment" between 25 and 30 years; in line with this request, the trial court assessed 30 years.[7]

Under these circumstances, we conclude that appellant failed to prove prejudice and the trial court did not abuse its discretion by denying his motion for new trial. *See Parker*, 462 S.W.3d at 565. We overrule appellant's third issue.

### 3. Trial counsel's failure to preserve objection to reading of appellant's prior felony conviction for attempted capital murder in his indictment for felon in possession

Next, appellant argues that trial counsel's failure to properly preserve an objection to the reading of appellant's prior felony conviction for attempted capital murder in his felon-in-possession indictment during his arraignment before the jury constituted ineffective assistance of counsel.

Appellant acknowledges that trial counsel "did object to the State reading to [sic] the prior felony conviction when the trial court ordered the State to read the full indictment for felon in possession of a firearm charge." Appellant contends that trial

---

[7] Appellant has not argued that trial counsel's request in this 25-to-30-year range constituted deficient performance.

counsel, however, waived this previous objection by later stating he had "no objection" to the introduction of appellant's redacted stipulation and judgment when the State offered these documents during Maxwell's testimony at trial. Appellant argues that the jury's hearing that his prior felony was attempted capital murder when the State read his felon-in-possession indictment during arraignment, in conjunction with the later admission and publishing of his redacted stipulation and judgment for attempted capital murder of a police officer, prejudiced him because it "simply paint[ed] the picture of [a]ppellant being a violent person."

At the new-trial hearing, the trial court stated its recollection was that trial counsel "did object and the prosecutor obviously agreed that that portion of the indictment shouldn't be read during arraignment." The trial court further acknowledged that "if there was an error, this was [the court's] error and not [trial counsel]'s."

To prove the prior-conviction-felony element of felon in possession, the State only needs to prove the defendant's status as a felon, without any need to prove the particular type of felony conviction. *Adekeye v. State*, 437 S.W.3d 62, 72 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd); *see State v. Mason*, 980 S.W.2d 635, 641 (Tex. Crim. App. 1998). In *McIlroy v. State*, 188 S.W.3d 789, 793–96 (Tex. App.—Fort Worth 2006, no pet.), the Fort Worth Court of Appeals concluded that the trial court abused its discretion in a case when the defendant was charged with possession of methamphetamine by permitting the State to read the portion of the defendant's felon-in-possession indictment that described his prior felony offense for possession of methamphetamine. In addition, our court has stated when stipulating to evidence of a defendant's prior felony, trial "[c]ounsel could . . . just stipulate[] that [the defendant] was a convicted felon, without saying anything more." *Adekeye*, 437 S.W.3d at 72. "This tactic [could] eliminate[] the 'especially

14

obvious' risk of unfair prejudice associated with mentioning a prior conviction that is similar to a pending charge." *Id.*

Even assuming without deciding that trial counsel's performance during the guilt/innocence phase related to the jury's hearing about appellant's prior conviction for attempted capital murder fell below standards of professional norms, based on our review of the record as a whole, we disagree with appellant that any prejudice is shown here.[8] The State presented a strong case for appellant's guilt. *See id.* at 73 (no prejudice for purposes of ineffective assistance of counsel based on stipulation informing jury of appellant's prior felony conviction for aggravated robbery when evidence of appellant's guilt for current offenses of attempted aggravated robbery and felon in possession was overwhelming); *cf. McIlroy*, 188 S.W.3d at 797 (no harm when "overwhelming evidence exists supporting McIlroy's present conviction for possession of methamphetamine and for possession of a firearm by a felon").

Eyewitnesses Machell and John testified to appellant's violent encounter with them—appellant not only threatened to kill them with a firearm, but also attacked Machell with it. Machell testified that "[i]t felt like a thousand pounds come down [sic] on my head" when appellant hit her. Appellant admitted to having a firearm, although he maintained that he threw it into a ditch; and police recovered two firearms and ammunition from appellant's motorcycle during an inventory search. John identified one of these firearms as the one used by appellant in the assaults and described it as "the same one" appellant previously had shown to John.

During closing arguments, neither trial counsel nor the State highlighted the nature of appellant's prior felony as an attempted capital murder. *See McIlroy*, 188 S.W.3d at 797. The State merely noted that the jury "heard evidence, a stipulation

---

[8] Again, we need not determine the deficient-performance prong where prejudice is dispositive. *See Washington*, 417 S.W.3d at 724.

that [appellant] wrote out himself that he committed the prior offense and that he was a felon on April 2, 2014."

In addition, trial counsel requested, and the trial court provided, an instruction to the jury in the aggravated-assault cases that:

> Evidence that the defendant was previously convicted of an offense can be considered by you only for the limited purpose of determining if you believe the defendant is guilty of felon in possession of a weapon and cannot be considered by you for any other purpose. Even though evidence was introduced that the defendant was previously convicted of an offense or offenses, you can only consider such evidence if you first believe beyond a reasonable doubt that the defendant was previously convicted of an offense or offenses and then you must not consider it as evidence of guilt in this case.

In all three cases, the jury charge also instructed:

> You are further instructed that if there is any evidence before you in this case regarding the defendant's committing an alleged offense or offenses other than the offense alleged against him in the indictment in this case, you cannot consider such evidence for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offense or offenses, if any, and even then you may only consider the same in determining the motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment and for no other purpose.

We presume that the jury followed these instructions. *See Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996).

We conclude appellant has not shown a reasonable probability that the outcome of his trial would have been different but for any unprofessional error by trial counsel. *See Adekeye*, 437 S.W.3d at 73. The trial court did not abuse its discretion by denying appellant's motion for new trial, and we overrule appellant's fourth issue.

16

**D. Bills of cost assessed against appellant**

Court costs are legislatively-mandated obligations resulting from a conviction. *See* Tex. Gov't Code Ann. §§ 102.021, 102.041; Tex. Code Crim. Proc. Ann. art. 102.005. Court costs are "a nonpunitive recoupment of the costs of judicial resources expended in connection with the trial of the case." *Johnson v. State*, 423 S.W.3d 385, 390 (Tex. Crim. App. 2014). Only statutorily-authorized costs may be imposed against a criminal defendant. Tex. Code Crim. Proc. Ann. art. 103.002; *Johnson*, 423 S.W.3d at 389. Although courts may impose such costs, the legislature has provided in article 102.073 of the Code of Criminal Procedure that if "a defendant is convicted of two or more offenses or of multiple counts of the same offense" "[i]n a single criminal action," then "the court may assess each court cost or fee only once against the defendant." Tex. Code Crim. Proc. Ann. art. 102.073(a).

In his final issue, appellant contends that the trial court erred in assessing duplicative court costs in all three judgments because costs may only be assessed once when, as here, a defendant is convicted of multiple offenses arising from a single criminal action. *See id.*[9] The State agrees that "the trial court should not have assessed costs in all three cases."

In each judgment, court costs are listed "as assessed." The bill of cost accompanying each judgment reflects the following total amounts assessed,

---

[9] Code of Criminal Procedure article 102.073 provides, in relevant part:

(a) In a single criminal action in which a defendant is convicted of two or more offenses or of multiple counts of the same offense, the court may assess each court cost or fee only once against the defendant.

(b) In a criminal action described by Subsection (a), each court cost or fee the amount of which is determined according to the category of offense must be assessed using the highest category of offense that is possible based on the defendant's convictions.

Tex. Code Crim. Proc. Ann. art. 102.073(a–b).

respectively: $239.00 (trial court case number 1423420, second-degree aggravated assault of John), $239.00 (trial court case number 1423421, third-degree felon in possession), and $329.00 (trial court case number 1532840, second-degree aggravated assault of Machell). Appellant and the State do not dispute that there are overlapping identical court costs among the three cases,[10] but disagree slightly as to our remedy. Appellant requests that we modify the judgments in trial court case numbers 1423241 and 1532840 to delete the identical court costs. The State requests that we delete the identical court costs awarded in trial court case numbers 1423420 and 1423421, and not modify the costs assessed in trial court case number 1532840.

Article 102.073(b) states that "each court cost or fee of which is determined according to the category of offense must be assessed using the highest category of offense that is possible based on the defendant's convictions." Tex. Code Crim. Proc. Ann. art. 102.073(b). Therefore, because the third-degree felony conviction for felon in possession was the lower category of offense of which appellant was convicted, we delete $234.00 in duplicative costs in trial court case number 1423421. *See id.*; *Guerra v. State*, 547 S.W.3d 445, 447 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (deleting duplicative costs in lower-category offense).

As to whether to delete the identical costs in either trial court case number 1423420 or 1532840 (each a second-degree felony for aggravated assault with a deadly weapon), we agree with the State that costs should be deleted in case number 1423420. This is because in cases involving case numbers within the same category of offense, appellate courts generally retain the identical costs in the case number

___

[10] Appellant contends that the overlapping amount of court costs is $234.00. The State contends this amount is $239.00. Appellant properly does not request removal of the $5.00 "arrest w/o warrant/capias" fee because this fee applies separately to each of his convictions. *See* Tex. Code Crim. Proc. Ann. art. 102.011(e); *Guerra v. State*, 547 S.W.3d 445, 447 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ("By the plain language of the statute, the arrest fee applies to each conviction.").

18

that includes the higher/highest amount of additional, nonduplicative fees.[11] Here, that is case number 1532840, so we delete the duplicative costs in case number 1423420. Therefore, we partially sustain appellant's fifth issue.

### III.  CONCLUSION

We affirm the judgment in trial court case number 1532840 (appellate case number 14-18-00009-CR). We modify the judgments in trial court case numbers 1423420 (appellate case number 14-18-00010-CR) and 1423421 (appellate case number 14-18-00021-CR) by deleting $234.00 in duplicative fees, such that the "total amount assessed" in each criminal bill of costs is $5.00, and as so modified, we affirm the judgments.

/s/    Charles A. Spain
       Justice

Panel consists of Justices Wise, Zimmerer, and Spain.

Do Not Publish — TEX. R. APP. P. 47.2(b).

---

[11] *See Cain v. State*, 525 S.W.3d 728, 734 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd); *Robinson v. State*, 514 S.W.3d 816, 828 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd); *Williams v. State*, 495 S.W.3d 583, 589–90 (Tex. App.—Houston [1st Dist.] 2016, pet. dism'd) (op. on reh'g).

19